No. 24-2683

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

ROBDARIUS WILLIAMS,
Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 22-CR-00063
The Honorable Judge Jane Magnus-Stinson

_____

**BRIEF AND REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT, ROBDARIUS WILLIAMS**

_____

FEDERAL PUBLIC DEFENDER          THOMAS W. PATTON
CENTRAL DISTRICT OF ILLINOIS     Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois                 JOHANNA M. CHRISTIANSEN
Telephone:   (309) 671-7891      Assistant Federal Public Defender
Fax:         (309) 671-7898
Email:  Johanna_Christiansen@fd.org


                                 Attorneys for Defendant-Appellant,
                                 ROBDARIUS WILLIAMS

_____

**ORAL ARGUMENT REQUESTED**

_____

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __24-2683__

Short Caption: __United States v. Williams__

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

__Robdarius Williams__

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

__Johanna M. Christiansen; Thomas W. Patton; James A. Edgar; and Valerie Horvath__

(3)     If the party, amicus or intervener is a corporation:

    i)     Identify all its parent corporations, if any; and

        __N/A__

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:

        __N/A__

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    __N/A__

Attorney's Signature: __s/ Johanna M. Christiansen__          Date:  __April 17, 2025__

Attorney's Printed Name:  __Johanna M. Christiansen__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes**  ☒     **No**  ☐

Address:  __401 Main Street, Suite 1500__

        __Peoria, Illinois__

Phone Number: __(309) 671-7891__               Fax Number:  __(309) 671-7898__

E-Mail Address:  __Johanna_Christiansen@fd.org__

ii

# TABLE OF CONTENTS

**PAGE**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ........................................................ii

TABLE OF AUTHORITIES ...............................................................................v

     CASES .....................................................................................................v

     STATUTES ...............................................................................................v

     OTHER AUTHORITIES ...........................................................................vi

JURISDICTIONAL STATEMENT ..................................................................1

ISSUE PRESENTED FOR REVIEW ..............................................................2

    I.    Whether the evidence was sufficient to support the finding that Mr. Williams had advance knowledge that his co-defendants would brandish a firearm during the robbery of the cell phone store where the government presented no evidence of Mr. Williams's intent to aid and abet the brandishing of a firearm and Mr. Williams was the getaway driver, was not present when the gun was brandished, and the firearm was concealed until his co-defendants were in the store, committing the robbery? ...........................................................2

STATEMENT OF THE CASE ...........................................................................3

    I.    Factual Background and Indictment .................................................4

    II.   Jury Trial ...........................................................................................4

    III.  Presentence Investigation Report ....................................................8

    IV.  Sentencing and Judgment in a Criminal Case .................................8

SUMMARY OF ARGUMENT ........................................................................11

ARGUMENT ................................................................................................12

    I.    The evidence was insufficient to support the finding that Mr. Williams had advance knowledge that his co-defendants would brandish a firearm during the robbery of the cell phone

store where the government  presented no evidence of Mr. Williams's intent to aid and abet the  brandishing of a firearm .. 12

    A.    Standard of Review ................................................................ 12

    B.    The government failed to prove beyond a reasonable doubt that Mr. Williams had advance knowledge his co-defendant would brandish the firearm ................................ 13

CONCLUSION ............................................................................................ 20

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B) ................ 21

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Clark v. United States*, 680 Fed. Appx. 470 (7th Cir. 2018)..........................................18

*Farmer v. United States*, 867 F.3d 837 (7th Cir. 2017)..................................................18

*Montana v. Cross*, 829 F.3d 775 (7th Cir. 2016)......................................................14, 15

*Nye & Nissen v. United States*, 336 U.S. 613 (1949) ....................................................14

*Rosemond v. United States*, 572 U.S. 65 (2014) ...........................................11, 14, 15, 16

*United States v. Allen*, 390 F.3d 944 (7th Cir. 2004) ....................................................13

*United States v. Anderson*, 988 F.3d 420 (7th Cir. 2021)..............................................12

*United States v. Armour*, 840 F.3d 904 (7th Cir. 2016) ....................................11, 15, 16

*United States v. Page*, 123 F.4th 851 (7th Cir. 2024) ...................................................12

*United States v. Peterson*, 823 F.3d 1113 (7th Cir. 2016) .............................................12

*United States v. Rivera*, 901 F.3d 896 (7th Cir. 2018)...................................................18

*United States v. Sorenson*, 2025 U.S. App. LEXIS 8777 (7th Cir. Apr. 14, 2025).......12

*United States v. Torres-Chavez*, 744 F.3d 988 (7th Cir. 2014)......................................12

*United States v. Woods*, 148 F.3d 843 (7th Cir. 1998) ..................................................15

## STATUTES

18 U.S.C. § 2 ..............................................................................................1, 4, 1, 13, 14

18 U.S.C. § 924(c).......................................................................8, 11, 13, 14, 15, 17, 18

18 U.S.C. § 924(c)(1)(A)(i) ...........................................................................................18

18 U.S.C. § 924(c)(1)(A)(ii) ...........................................................................1, 4, 13, 18

18 U.S.C. § 1591(a) .........................................................................................................1

18 U.S.C. § 1951(a) ........................................................................4

18 U.S.C. § 3231 ...........................................................................1

18 U.S.C. § 3553(a) ......................................................................9

18 U.S.C. § 3742 ...........................................................................1

28 U.S.C. § 1291 ...........................................................................1

## OTHER AUTHORITIES

None.

## JURISDICTIONAL STATEMENT

1.     The jurisdiction of the United States District Court for the Southern District of Indiana was founded upon 18 U.S.C. § 3231.  A grand jury sitting in the aforementioned district charged Robdarius Williams by indictment with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §§ 1591(a), Hobbs Act robbery in violation of 18 U.S.C. §§ 1591(a) and 2; and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.

2.     The jurisdiction of the United States Court of Appeals for the Seventh Circuit is founded upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and is based upon the following particulars:

i.     Date of entry sought to be reviewed:  Sentence imposed on September 17, 2024; Judgment in a Criminal Case entered on September 18, 2024.

ii.     Filing date of motion for a new trial:  n/a;

iii.     Disposition of motion and date of entry:  n/a;

iv.     Filing date of notice of appeal:  September 23, 2024.

## ISSUE PRESENTED FOR REVIEW

I.     Whether the evidence was sufficient to support the finding that Mr. Williams had advance knowledge that his co-defendants would brandish a firearm during the robbery of the cell phone store where the government presented no evidence of Mr. Williams's intent to aid and abet the brandishing of a firearm and Mr. Williams was the getaway driver, was not present when the gun was brandished, and the firearm was concealed until his co-defendants were in the store, committing the robbery?

## STATEMENT OF THE CASE[1]

Defendant-Appellant Robdarius Williams participated in the robbery of an AT&T store with two co-defendants, Quintez Tucker and Darrelle Risper, on December 3, 2021.  The men were under surveillance by law enforcement prior to and during the robbery because Tucker had been involved in other robberies before this one.  Mr. Williams's role in the robbery was as the driver.  He drove to an apartment building where Tucker obtained a firearm.  Mr. Williams then drove to pick up Risper and they drove to a shopping area on the south side of Indianapolis.  Tucker and Risper got out of the car and committed the robbery while Mr. Williams parked the car on the rear side of the store.  Tucker and Risper left the store with merchandise, got in the car, and Mr. Williams drove away.  Unbeknownst to Mr. Williams, Risper pointed the firearm at the employee in the store during the robbery.

The evidence established a robbery occurred and a firearm was brandished.  Mr. Williams clearly played a role in the robbery.  The evidence does not show that Mr. Williams aided and abetted the brandishing of that firearm.  The government failed to show, as it must, that Mr. Williams had advance knowledge the gun would be brandished and did not show Mr.

---

[1] The following abbreviations are used herein: Record on appeal: "R. __;" Appendix: "App. at __;" Trial Transcript: "T. Tr. __;" and Government's Trial Exhibits: "Gov't Ex. __."

Williams's intent that that element of the crime would be committed.  Therefore, this case must be returned to the district court for resentencing without the enhanced sentence for brandishing.

## I.    Factual Background and Indictment.

Tucker and another man, D'Maurah Bryant, were involved in multiple robberies in the Indianapolis area in November and December of 2021.  (R. 1, 97, 98.)  On April 21, 2022, a grand jury issued the indictment charging Mr. Williams, Tucker, and Bryant with multiple offenses.  (R. 1.)  Count 1 alleged a conspiracy to commit Hobbs Act robbery from November 8, 2021, through December 3, 2021.  (R. 1.)  The district court granted the government's motion to dismiss this charge against Mr. Williams prior to trial.  (R. 116.)  The indictment charged Mr. Williams in two additional counts: Hobbs Act robbery of the AT&T store on December 3, 2021, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count 16) and aiding and abetting brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count 17).  (R. 1.)

## II.    Jury Trial.

The primary issue at trial was whether Mr. Williams had advance knowledge Tucker and Risper would brandish a firearm when they robbed the AT&T store.  (T. Tr. 25, 189-200.)

FBI Task Force Officer Austin Arndt testified that law enforcement officers

began investigation into the involvement of a 2017 Chevrolet Malibu in connection to the series of robberies involving Bryant and Tucker.  (T. Tr. 32; Gov't Ex. 32.)  On December 1, 2021, officers installed a GPS tracker on the Malibu.  (T. Tr. 32-33.)  The Malibu was registered to Mr. Williams's mother and he was seen driving it on December 2, 2021.  (T. Tr. 34.)  On December 3, 2021, officers conducting surveillance saw Mr. Williams drive the Malibu to Phalen Leadership Academy in the afternoon and go to Tucker's apartment complex around 3 p.m.  (T. Tr. 36-37.)  Two officers, Erik Forestal and Matthew McDonald, were in unmarked vehicles conducting surveillance at the apartment complex.  (T. Tr. 40.)

Detective Matthew McDonald testified that he was in a car conducting surveillance of the apartment complex.  (T. Tr. 69.)  When the Malibu arrived at the complex, Tucker and an unidentified man left the car and went inside an apartment building while Mr. Williams walked around the parking lot.  (T. Tr. 72.)  McDonald testified that Mr. Williams was attempting to steal a license plate off of a different car in the lot.  (T. Tr. 72.)  Detective Erik Forestal also witnessed Mr. Williams attempting to steal license plates because he unsuccessfully tried to steal the plate off of the unmarked car Forestal was sitting in.  (T. Tr. 132.)  Mr. Williams eventually found a license plate and got back into the Malibu.  (T. Tr. 72.)  Approximately 12 minutes later, Tucker and the unidentified man left the

apartment building and Tucker is holding a long rifle without the buttstock close to his right leg.  (T. Tr. 73, 135; Gov't Ex. 3, at 12:33.)  Tucker got into the back seat of the Malibu with the firearm.  (T. Tr. 137.)

The Malibu left the apartment complex, went to a gas station, and then went to a public park.  (T. Tr. 41.)  Risper was observed in the Malibu at the gas station.  (R. 156, p. 5.)  They met up with men in a Ford Focus at the park.  (T. Tr. 43.)  Both cars drove to the south side of Indianapolis and both cars circled a shopping area containing a Verizon store, an AT&T store, a Kroger grocery store, and a store called Weekends Only.  (T. Tr. 47-51; Gov't Ex. 37.)  At 5:44 p.m., Mr. Williams drove the Malibu into the AT&T parking lot.  (T. Tr. 57.)  Tucker and Risper got out of the car at 5:47 p.m. and Mr. Williams parked the car on the rear side of the lot, by the garbage bin.  (T. Tr. 58.)  The firearm is not visible in any of the surveillance video or photographs on the outside of the AT&T store.  However, Nicholas Andrews, another officer surveilling the store, testified he could "see the outline of a long gun or a rifle down the front of [one man's] pants" when Tucker and Risper entered the store.  (T. Tr. 92.)

Risper did not pull the rifle out of his pants until he and Tucker were in the AT&T store.  (T. Tr. 93.)  Andrews described how the rifle was concealed in Risper's clothing, testifying he "used his left hand, and he pulled up the sweatshirt and then had his right hand on the grip of the rifle, which the rifle

didn't have a stock on it.  It was just the pistol grip.  So lifted the sweatshirt with the left hand and pulled the rifle out of his pants to clear the top of his pants and then pointed it at the manager at the AT&T."  (T. Tr. 93.)  Nathan Ray, the manager of the AT&T store, testified that he was the only employee in the store at the time of the robbery.  (T. Tr. 114.)  Tucker and Risper instructed him to give them cash from the register and took him at gunpoint to the back room.  (T. Tr. 115-17.)

While they were in the back room, Ray heard Tucker and Risper talking to someone on speaker phone.  (T. Tr. 119.)  He testified the person on the phone was giving instructions as to "what kinds of devices specifically to get, asked me questions about the back entrance . . . . and if it connected to Emerson Avenue."  (T. Tr. 119.)  Ray said the person talking on the other end of the phone had a deep voice.  (T. Tr. 119.)  Officer Arndt testified that Mr. Williams had a "very distinct, low tone, slow voice."  (T. Tr. 62.)  However, no other evidence was provided regarding the identity of the person on speakerphone.  Ray opened part of the safe for the robbers and they loaded up a couple of boxes with products.  (T. Tr. 124.)

At 5:54 p.m., Tucker and Risper left the store carrying multiple boxes and got into the Malibu, which was still in the rear of the store.  (T. Tr. 80; Gov't Ex. 20, 21.)  Mr. Williams drove the Malibu away.  (T. Tr. 58.)  Officers confirmed

7

there had been a robbery at the store and conducted a traffic stop of both the Malibu and the Focus at 6:05 p.m.  (T. Tr. 59-60.)  Mr. Williams was the driver of the Malibu and all three men were arrested after they were removed from the car.  (T. Tr. 143.)  The Malibu contained the rifle, a bandana, blue gloves, masks, approximately $400 in cash, 12 or 13 iPhones, three Apple watches, and some Air Pods.  (T. Tr. 100-02.)

The jury return guilty verdicts on both counts on May 14, 2024.  (T. Tr. 211; R. 140.)

## III.  Presentence Investigation Report.

The United States Probation Office prepared the Presentence Investigation Report using the November of 2023 guidelines.  (R. 156, p. 7.)  The base offense level for the robbery charge was 20 and the total offense level was 20.  (R. 156, p. 7.)  Mr. Williams had two criminal history points and was in criminal history category II.  (R. 156, p. 8.)  The applicable guidelines range for the robbery charge was 37 to 46 months.  (R. 156, p. 12.)  Because the jury found Mr. Williams guilty of aiding and abetting the brandishing of the firearm, the § 924(c) charged carried a mandatory minimum consecutive sentence of seven years or 84 months.  (R. 156, p. 12.)

## IV.  Sentencing and Judgment in a Criminal Case.

The district court held a sentencing hearing on September 17, 2024.  (R.

186; App. 1.)  The district court made the following findings regarding the

appropriate sentence, including findings about Mr. Williams's role in the

offenses:

> THE COURT:  Okay.  So the Court will review the 3553(a) factors that are required.  The nature and circumstances of the offense is where the Court begins in determining how to impose a sentence that's sufficient but not greater than necessary.
>
> So as the victim testified at your trial, Mr. Williams, this was a very disturbing and life-altering experience for him; and while you may have thought – well, let's put it this way: I know the issue at trial was whether the gun could be, is essence, put on you, but the photographic evidence that's contained in the Government's sentencing memorandum, particularly Exhibit 3, shows the two other people that were involved in this robbery standing there holding this very large assault rifle right next to your car.
>
> Also, the fact that you were observed and captured on film stealing a license plate from another vehicle to try to evade apprehension is another aggravating factor about the nature and circumstances of the offense.
>
> You haven't been convicted, and it hasn't been accounted for in the guidelines, of any of the other robberies. Just for your information, your co-defendants respectively got 25 and 30 years in prison mandatory last week. Those – that December [3rd], 2021, robbery was included.  I believe they both pled guilty to that robbery -- or just Tucker?
>
> [GOVERNMENT COUNSEL]: Tucker pled guilty to that robbery; Bryant did not.
>
> THE COURT: Anyway, the point of me noting that is you wouldn't have been seen on film trying to steal license plates and with your co-defendants with the AK if law enforcement hadn't put the tracking device on your mom's vehicle, and that's how you were apprehended, and that's how you all were apprehended right after the robbery.  So that evidence was obtained through that work through law enforcement.
>
> When you decide to go – or to assist people who are going into a phone store to hold up the clerk at gunpoint with an AR style rifle, that puts everybody in jeopardy, most specifically the victim of

the crime, and it alters their lives permanently because they can't feel safe at work or in their life after that, I suppose. So that is why the nature and circumstances of the offense are aggravating.

Your history and characteristics, it's unfortunate that the track that you were on in Mississippi got derailed by the move to Indianapolis because it seemed as though you were on a good path there being involved in your school, being involved in athletics, keeping focused, keeping busy. That's really – that was really a good path, but the path that you took to engage in this robbery was a huge deviation from that path, and – but I look at some other things that are indicated in the PSR, that you do suffer from some mental illness, and that is a mitigating factor that is not included in the guidelines.

I don't know if you had a lack of youthful guidance your entire childhood, but certainly things weren't going well in terms of your supervision while you were here in Indianapolis once you moved here. Your employment record is also a positive mitigater; and like your co-defendants who have now been sentenced to 25 and 30 years respectively, you're a young man. Your age is such that we know that your brain isn't fully developed, and it will be some time, maybe a matter of four years, maybe a matter of eight years, before it is; but meanwhile, when you're making choices that put the lives of innocent people at risk, that's a problem for the Court.

So those mitigating factors are not included in the guideline calculation. I also think the victim impact that was displayed at the trial was not included. That's on the aggravating side of matters. So the Court's conclusion is that a mitigated sentence is warranted on Count 16 but not by much because of the severity and the seriousness of this crime. So as the Court looks at the guideline range for Count [16], the Court finds that a sentence of 30 months on Count [16] is appropriate. That is added to the 84 months mandatory consecutive, so the total is 114 months.

(App. 15-18.) The district court also imposed a three year term of supervised release on each count, a special assessment of $200, and a $800 fine. (App. 32, 34.)

## SUMMARY OF ARGUMENT

The evidence was insufficient to support the finding that Mr. Williams had advance knowledge that his co-defendants would brandish a firearm during the robbery of the cell phone store where the government presented no evidence of Mr. Williams's intent to aid and abet the brandishing of a firearm.  To aid and abet a crime, a defendant must not just associate himself with the venture but also participate in the crime he wishes to bring about and seek by his action to make it succeed.  Mr. Williams chose to participate in the robbery and the government proved enough at trial to show he knew a firearm would be possessed.  But the criminal scheme charged here was brandishing the firearm. There was no evidence that Mr. Williams aligned himself with that element of the offense.

The government's evidence at trial failed to support the brandishing element as instructed by *Rosemond* and *Armour*.  The government cannot simply argue the possession of a gun in furtherance of a robbery necessarily shows the gun will be brandished.  That argument would eviscerate any distinction between the possession crime in § 924(c) and the brandishing crime. Mr. Williams has met his heavy burden here and his conviction for brandishing must be reversed and remanded for resentencing.

**ARGUMENT**

**I.    The evidence was insufficient to support the finding that Mr. Williams
        had advance knowledge that his co-defendants would brandish a
        firearm during the robbery of the cell phone store where the government
        presented no evidence of Mr. Williams's intent to aid and abet the
        brandishing of a firearm.**

    **A.    Standard of Review.**

    This Court reviews *de novo* a sufficiency of the evidence challenge after a

jury verdict. *United States v. Sorenson,* 2025 U.S. App. LEXIS 8777, *5-*6 (7th Cir.

Apr. 14, 2025).  "Practically speaking, however, the standard of review is that for

sufficiency of the evidence." *Id., quoting United States v. Peterson*, 823 F.3d 1113,

1120 (7th Cir. 2016).  This Court considers the evidence presented at trial in the

light most favorable to the government and draws all reasonable inferences in its

favor. *United States v. Torres-Chavez,* 744 F.3d 988, 993 (7th Cir. 2014).  A

conviction will be overturned only if the Court determines that no rational trier

of fact could have found the essential elements of the offense beyond a

reasonable doubt.  *United States v. Page,* 123 F.4th 851, 858 (7th Cir. 2024).  This

burden has been described as nearly insurmountable but only nearly, not

completely.  *Sorenson,* 2025 U.S. App. LEXIS 8777 at *6; *United States v. Anderson,*

988 F.3d 420, 424 (7th Cir. 2021) (holding "nearly" does not mean "completely"

and defendants can prevail in sufficiency of the evidence challenges).  Where the

defendant does not file a motion for judgment of acquittal, the Court will review

the issue only if there would be a manifest miscarriage of justice. *United States v. Allen,* 390 F.3d 944, 947 (7th Cir. 2004).

**B.    The government failed to prove beyond a reasonable doubt that Mr. Williams had advance knowledge his co-defendant would brandish the firearm.**

Mr. Williams's burden here is a heavy one, but a burden he can meet because the government failed to meet its burden at the trial beyond a reasonable doubt.  The robbery of the AT&T store occurred and Mr. Williams clearly participated in the robbery.  In addition, it would be an insurmountable hurdle to argue he did not have advance knowledge a gun was possessed in furtherance of that robbery.  However, the government failed to provide *any* evidence Mr. Williams knew in advance, and intended, that a firearm would be brandished during that robbery.  Without such evidence, Mr. Williams cannot remain convicted of aiding and abetting the brandishing of the firearm.  The conviction and sentence based on 18 U.S.C. § 924(c)(1)(A)(ii) must be vacated and Mr. Williams must be resentenced.

The crux of this case is the interplay between aiding and abetting, as defined in 18 U.S.C. § 2, and offenses charged under 18 U.S.C. § 924(c).  Aiding and abetting is defined by statute as a person who aids, abets, counsels, commands, induces, or procures the commission of a federal offense.  18 U.S.C. § 2.  The statute derives from the common law standard for accomplice liability

and a person is liable under § 2 if he (1) takes an affirmative act in furtherance of the offense (2) with the intent of facilitating the offense's commission. *Rosemond v. United States,* 572 U.S. 65, 70-71 (2014). To be guilty of aiding and abetting, the defendant must facilitate an element of the crime but also have intent extending to the entire crime. *Id.* at 75-76. "An intent to advance some different or lesser offense is not . . . sufficient: Instead, the intent must go to the specific and entire crime charged . . . to the full scope (predicate crime plus gun use) of § 924(c)." *Rosemond,* 572 U.S. at 76; *see also Montana v. Cross,* 829 F.3d 775, 780 (7th Cir. 2016). Mr. Williams took an affirmative act in furtherance of the § 924(c) crime involving possession of the firearm. But the government failed to prove his intent extended to the entire crime of brandishing the firearm.

To aid and abet a crime, a defendant must not just associate himself with the venture but also participate in the crime he wishes to bring about and "seek by his action to make it succeed." *Rosemond,* 572 U.S. at 76-77, *quoting Nye & Nissen v. United States,* 336 U.S. 613, 619 (1949). A person who participates in a criminal scheme knowing its extent and character "intends that scheme's commission." *Rosemond,* 572 U.S. at 77. An aider and abettor has chosen "to align himself with the illegal scheme in its entirety – including the use of a firearm." *Id.* at 78. Mr. Williams chose to participate in the robbery and the government proved enough at trial to show he knew a firearm would be

possessed.  But the entire criminal scheme charged here was brandishing the firearm.  There was no evidence Mr. Williams aligned himself with that element of the offense.

The intent portion of the aiding and abetting a § 924(c) offense requires that the defendant's knowledge be "advance knowledge" that enables him to "make the relevant legal (and indeed, moral) choice" to continue to participate in the offense.  *Rosemond,* 572 F.3d at 78.  When an accomplice knows nothing of the use of a gun until it appears at the scene, "he may already have completed his acts of assistance, or even if not, he may at that late point have no realistic opportunity to quit the crime."  *Id.*

When the § 924(c) offense charged by the government is brandishing the firearm, the government must present actual knowledge that his co-defendant would brandish the gun during the underlying robbery.  *Montana,* 829 F.3d at 785, *quoting United States v. Woods,* 148 F.3d 843, 846 (7th Cir. 1998).  This Court's *Armour* case definitively held that the government must prove beyond a reasonable doubt that the defendant knew in advance "not only that [his co-defendants] would be carrying firearms but also that they would be brandishing them."  *United States v. Armour,* 840 F.3d 904, 911 (7th Cir. 2016).

In *Armour,* Armour led the enterprise and his co-defendants actually brandished the firearms during the robbery. *Id.* at 911.  While the robbery

15

occurred, Armour sat in the parking lot and directed the co-defendants by radio. *Id.* at 905.  Armour recruited his co-defendants and supplied them with clothing, reserved hotel rooms, and "orchestrated the plan."  *Id.* at 906.  This Court ultimately held that, "[I]n light of the high standard of proof beyond a reasonable doubt, we cannot save this sentence on the ground that any reasonable jury would have convicted Armour of aiding and abetting the actual brandishing." *Id.* at 911.

Like Armour, Mr. Williams was an active participant in the robbery.  He drove the car, picked up Tucker and Risper, drove to pick up the gun, drove to the location, scouted various stores, and dropped off the robbers at the AT&T store.  He then waited in the parking lot for them and drove them away from the scene.  But none of these facts point to Mr. Williams's intent to the brandishing element or to his advance knowledge the firearm would be brandished.

The government's evidence at trial failed to support the brandishing element as instructed by *Rosemond* and *Armour*.  The government relied on an argument about the size of the gun at trial.  But the size of the gun only goes to whether Mr. Williams knew the gun was possessed.  The size of the gun does not matter as proof whether a gun will be brandished.  Any size of gun can be brandished; smaller guns can be concealed from co-participants in a crime more readily than larger guns.

16

The government also relied on an argument that Mr. Williams could see in the store while the robbery was occurring from where he was sitting in the car. But the evidence presented at trial showed only that law enforcement conducting surveillance saw the robbery actually take place and that Mr. Williams was not in a position to see in the store from the side rear of the parking lot. Officer Andrews testified he could see the firearm in Risper's pants as he and Tucker walked into the store. (T. Tr. 93.) Again, this was before the brandishing took place. Andrews also testified he could see Risper brandishing the gun during the robbery through the front windows. (T. Tr. 92.) But Andrews was facing the front doors and windows whereas Mr. Williams was on the side rear of the building. (Gov't Ex. 11 at 2:06.) There is no evidence Mr. Williams could see in the windows of the store.

Finally, the government argued Mr. Williams must have known a firearm was brandished because he was the person the speakerphone. But he was never identified as that person, only that he has a deep voice and the person on the speakerphone also had a low voice. Furthermore, no one testified that Tucker and Risper talked on the speaker phone about the fact that they were brandishing the firearm in the store. This evidence does not support the finding of guilt on the brandishing element of the § 924(c) charge.

This is not a case like *Clark* where the defendant saw his co-defendants use

and brandish a gun in prior robberies. *See Clark v. United States,* 680 Fed. Appx. 470, 475 (7th Cir. 2018). The larger conspiracy charge in this case was dismissed as to Mr. Williams and there was no evidence he was connected to the other robberies. It is not also not case where the government proved the defendant and her co-defendants discussed the robbery plan before the robbery and the defendant wrote the teller note mentioning the gun. *See Farmer v. United States,* 867 F.3d 837, 842 (7th Cir. 2017). There was no co-actor testimony in this case and no evidence of any agreement between the men regarding the brandishing. Likewise, this is not a case where the defendant provided the gun used during multiple robberies and agreed one person would use the gun to "keep customers at the back of the store." *United States v. Rivera,* 901 F.3d 896, 901-02 (7th Cir. 2018). Again, no evidence exists as to Mr. Williams's advance knowledge of brandishing.

The government cannot simply argue the possession of a gun in furtherance of a robbery necessarily shows the gun will be brandished. That argument would eviscerate any distinction between the possession crime in § 924(c) and the brandishing crime. And those crimes must be separate crimes with distinct elements because they have separate punishments. Possession carries a five year mandatory minimum and brandishing carries a seven year mandatory minimum. *See* 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(1)(A)(ii).

Mr. Williams recognizes the heavy burden he has here but he has met it. His conviction for brandishing, and the resulting mandatory minimum consecutive sentence, was a manifest miscarriage of justice. Therefore, this case must be reversed and remanded for resentencing.

## CONCLUSION

For the foregoing reasons, Defendant-Appellant Robdarius Williams

respectfully requests this Court reverse and remand for resentencing.


Respectfully submitted,
THOMAS W. PATTON
Federal Public Defender

s/  Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
ROBDARIUS WILLIAMS

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)**

The undersigned certifies that this brief complies with the volume

limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32

in that it contains  words and 399  lines of text as shown by Microsoft Word 2016

used in preparing this brief.


s/  Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN


Dated: April 17, 2025

No. 24-2683

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

ROBDARIUS WILLIAMS,
Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 22-CR-00063
The Honorable Judge Jane Magnus-Stinson

_____

REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT, ROBDARIUS WILLIAMS

_____

FEDERAL PUBLIC DEFENDER                THOMAS W. PATTON
CENTRAL DISTRICT OF ILLINOIS           Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois                       JOHANNA M. CHRISTIANSEN
Telephone:   (309) 671-7891            Assistant Federal Public Defender
Fax:         (309) 671-7898
Email: Johanna_Christiansen@fd.org


                                       Attorneys for Defendant-Appellant,
                                       ROBDARIUS WILLIAMS

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

The undersigned counsel for Defendant-Appellant, hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix to this brief.

s/  Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender

Date: April 17, 2025

## APPENDIX TABLE OF CONTENTS

Certification ...................................................................................................ii

Excerpt of Sentencing Hearing Transcript ....................................................1

Judgment in a Criminal Case ........................................................................30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,    )
                            )
        Plaintiff,          )
                            )
                            )Cause No.
  vs.                       )1:22-cr-00063-JMS-MG-3
                            )Indianapolis, Indiana
ROBDARIUS WILLIAMS,         )September 17, 2024,
                            )10:00 a.m.
        Defendant.          )


Before the
HONORABLE JUDGE JANE MAGNUS-STINSON


TRANSCRIPT OF
SENTENCING


FOR PLAINTIFF:    Mr. Jeremy Fugate
                  United States Attorney's Office
                  10 West Market Street, Suite 2100
                  Indianapolis, Indiana 46204
                  jeremy.fugate@usdoj.gov


FOR DEFENDANT:    Mr. James Edgar
                  J. Edgar Law Offices, PC
                  1512 North Delaware
                  Indianapolis, Indiana 46202
                  jedgarlawyer@gmail.com


COURT REPORTER: Erin M. Materkowski, RPR, CRR
                erin_materkowski@insd.uscourts.gov

(Proceedings taken by machine shorthand;
transcript produced by computer-aided
transcription)

1        (In open court.)

2        THE COURT:  We're here under Cause No.

3    1:22-cr-63.  This is the case of the United States

4    v. Robdarius Williams, who is present in person

5    with counsel, Mr. Edgar.  The Government is present

6    by Assistant United States Attorney Jeremy Fugate.

7    The Court is assisted by probation officer Danieka

8    Thompkins, thank you for being here and for

9    preparation of the presentence report, and our

10    court reporter is Erin Materkowski.

11        Previously Mr. Williams was convicted

12    following a trial by jury on May 14, 2024.  He was

13    found guilty of Counts 16 and 17, and we're here

14    for sentencing today.

15        The final version of the presentence report

16    was prepared on July 17th.  Does your client

17    acknowledge receipt of the report before the 35-day

18    minimum period, Mr. Edgar?

19        MR. EDGAR:  Yes, Your Honor.

20        THE COURT:  All right.  And before court

21    today, the Court has reviewed that report, the

22    presentence report, as well as the sentencing

23    memorandum submitted on behalf of the Government as

24    well as the memorandum submitted on behalf of

25    Mr. Williams.  There are also letters of support

1    that were submitted in support of Mr. Williams.

2            Mr. Edgar, have you and Mr. Williams

3    carefully reviewed the Presentence Investigation

4    Report?

5            MR. EDGAR:  Yes, Your Honor.

6            THE COURT:  Is it accurate?

7            MR. EDGAR:  Yes, Your Honor.

8            THE COURT:  Are there any objections?

9            MR. EDGAR:  No, Your Honor.

10            THE COURT:  Are there any for the

11    Government?

12            MR. FUGATE:  No, Your Honor.

13            THE COURT:  All right.  If we could all

14    turn within the Presentence Investigation Report to

15    pages -- page 13, sorry, Paragraphs 68 and 69,

16    there the probation officer has listed the

17    conditions of supervision that she's recommending

18    for Mr. Williams' supervision following a term of

19    imprisonment.

20            Does the Government have any objections to

21    those proposed conditions?

22            MR. FUGATE:  No, Your Honor.

23            THE COURT:  All right.  Mr. Edgar, have you

24    and Mr. Williams carefully reviewed these

25    conditions?

4

1           MR. EDGAR:  Yes, Your Honor.

2           THE COURT:  Do you have any objections?

3           MR. EDGAR:  No, Your Honor.

4           THE COURT:  All right.  Mr. Williams, do

5    you agree with your lawyer that you have reviewed

6    the mandatory conditions of supervision and the

7    proposed additional conditions of supervision that

8    are contained within the presentence report?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  All right.  Do you understand

11   them?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  All right.  You have the right,

14   sir, to have me read them out loud to you when I

15   pronounce sentence; or if you believe you

16   understand them and why they're being imposed, you

17   can waive or give up that right.  Do you wish for

18   me to read the conditions when I pronounce

19   sentence?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  All right.  I will.

22          The Court will accept the presentence

23   report as its findings of fact, and we'll accept

24   the report for the record under seal.  In the event

25   of any appeal, counsel will have access to the

1  sealed portion of the report but not the

2  recommendation portion which shall remain

3  confidential.

4       At this time the Court will conduct the

5  guideline calculation.  The sentencing guidelines

6  are advisory, and the Court is required by law to

7  conduct a guideline calculation to determine what

8  Mr. Williams' guideline range is.

9       If everyone could please turn to the

10 presentence report at page 7, Count 16 for which

11 Mr. Williams was found guilty charges him with

12 interference with commerce by robbery.  The base

13 offense level for that charge is 20.  There are no

14 upward adjustments and downward adjustments, so the

15 total offense level is 20.  For the second count,

16 Count 17, there is a statutory mandatory minimum

17 sentence of seven years that must run consecutive

18 to any sentence on Count 16 we have to look at.  So

19 we determined that the base offense level -- or the

20 total offense level for Count 16 was 20.

21       Then we have to determine Mr. Williams'

22 criminal history category.  He has a conviction in

23 2023 from Marion County for resisting law

24 enforcement with a vehicle, two points are assessed

25 for that conviction, and that gives him a total

1  criminal history score of 2.

2          A total criminal history score of 2 results

3  in a criminal history category of II.  So at an

4  offense level of 20 for the robbery charge and a

5  criminal history category of II, the guideline

6  range is as follows:  37 to 46 months.  The term of

7  supervised release is one to three years.

8  Mr. Williams faces a guideline range fine of 15,000

9  to $150,000, and his special assessment is $200

10  because he was found guilty of two federal

11  felonies.

12          Going back to the term of imprisonment, as

13  I said, the base offense -- or the guideline range

14  for Count 16 is 37 to 46 months.  Then the

15  guideline range on Count 17 is 84 months which must

16  run consecutive to all other counts.

17          Counsel, do you agree that's the correct

18  calculation?

19          Mr. Fugate?

20          MR. FUGATE:  Yes, Your Honor.

21          THE COURT:  And Mr. Edgar?

22          MR. EDGAR:  Yes, Your Honor.

23          THE COURT:  All right.  Mr. Williams, you

24  have an opportunity during your sentencing to make

25  a statement.  You're not required to make a

1   statement.  Would you like to make a statement?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  All right.  You may make a

4   statement.  Now would be the time.

5          THE DEFENDANT:  I just want to start off by

6   saying that I apologize for what happened and my

7   role that I played in this situation.  I'm sorry

8   for the victims.  Since my release (sic), I've been

9   in programs, I've been on the right track, I was in

10  GED, and I'm still enrolled in GED right now, and

11  I'm looking to graduate next week, and that's it.

12         THE COURT:  Okay.  Thank you.

13         Argument on behalf of Mr. Williams,

14  Mr. Edgar?

15         MR. EDGAR:  Would the Court like me to

16  present from here, Your Honor?

17         THE COURT:  You can if you like, sure.  Is

18  your microphone on?  I just want to make sure.

19         MR. EDGAR:  It is on, I believe.

20         THE COURT:  You might want to move it a

21  little bit closer to you.  Thank you.

22         MR. EDGAR:  So a few things that I've

23  learned working with Mr. Williams.  One is he

24  presents to me significantly less mature than his

25  physical age, than his biological age.  I think the

1    Court can maybe determine that from his reactions

2    in court.  I do think he's intelligent, I do think

3    he's very thoughtful, but I do worry about his

4    decision-making capability.  I think that is

5    somewhat delayed.  I think that's fair to say.

6         He would probably appreciate me

7    highlighting to the Court that he went downhill

8    pretty fast after he moved to Indianapolis during

9    his high school years.  Prior to that, while living

10   in Mississippi, he was a three-letter athlete at

11   his high school, he was MVP of most of the teams

12   that he participated in, including football, and

13   was a tennis star, undefeated state champion tennis

14   star.  He received academic awards, so I do know

15   that he's intelligent based on his academic

16   records, and his meetings with me, he always asks

17   very thoughtful questions, important questions,

18   related to legal issues and factual issues on his

19   case.

20        As you can see from the right side of the

21   courtroom, as the Court looks out, he does have

22   strong family support here on his behalf today.

23   They wrote letters of support on his behalf, and

24   they will continue to stand by him during the time

25   that he is released.  He does communicate to me

1    that he understands what you lose when you engage

2    in behavior like this.  He was the driver of a car;

3    not proven that he possessed any firearms or was

4    involved in any firearms; although, he is paying a

5    heavy price for that.

6            He suffered the loss of several family

7    members shortly after his arrest in this case; and

8    while he was out on pretrial release, he did have

9    one hiccup where he tested positive for the use of

10   marijuana; but other than that, he was compliant

11   and worked very hard, Your Honor.  I think that is

12   documented and proven that he went to work.  He is

13   capable of working very hard.  He reports to me

14   that he would work consistently 60, 70, 80 hours a

15   week, and sometimes more if it was required by his

16   employer.

17           He does communicate to me that he

18   understands the impact that this has on the victims

19   in the case.  There is one particularly poignant

20   moment in the videos where there is a young couple

21   with a child; and as the armed gun man and

22   assistant comes into the store, they come into the

23   store, the parents are leaning over the child

24   obviously terrified, and clearly their one goal is

25   to protect that child, but Mr. Williams

1    communicates that he understands the -- in

2    reflection the impact that this type of behavior

3    has on the victims of the case.  Since that time he

4    himself has been victimized.  He has been stabbed,

5    stabbed twice in the back and once in the elbow.

6         I do think that his criminal history may be

7    considered to be slightly over represented.  It was

8    reduced to a misdemeanor.  It does result in two

9    points under the guidelines because he was in

10   custody quite a long time on a case like that.  I

11   have some curiosity over that since that was his

12   first offense why he was in custody for so very

13   long before signing a time-served plea; but based

14   on his lack of history, his ability to succeed in a

15   structured environment, the fact that this does not

16   seem to be a pattern of behavior for Mr. Williams,

17   I do think that he would respond very well if the

18   Court were to sentence him significantly below the

19   guidelines, and I do think that that is the

20   appropriate approach in this case.  Seven years is

21   a very long time in prison for a man of this age

22   and level of maturity.

23        If I may have one moment, Mr. Williams was

24   tapping on my shoulder --

25             THE COURT:  Sure.

1          MR. EDGAR:  -- I think he has something he

2    wanted to say to me.

3          Apparently I covered what he was hoping to

4    get my attention for, Judge.  Thank you, Your

5    Honor.

6          THE COURT:  Thank you.

7          Mr. Fugate?

8          MR. FUGATE:  Thank you, Your Honor.

9          This case is not an easy case, it's a tough

10   case because we do have a young defendant before

11   us, but it's also a tough case because of the

12   impact this defendant and his co-defendants'

13   actions had on the public and the victims that they

14   created in this case.  Now, had this defendant

15   solely been the getaway driver in this case, the

16   United States may have joined in with a below

17   guideline recommendation; however, those aren't the

18   facts of this case, Your Honor.  The facts of this

19   case are very disturbing.  The facts of this case

20   show that but for the defendant's efforts, new

21   victims wouldn't have been created on that very

22   day, and I want to kind of highlight those facts

23   for the Court at this time.

24          On the day of the robbery in December of

25   2021, the defendant being the oldest person in that

1   robbery group actually picked up one of his

2   co-defendants from high school that morning, and he

3   took him to an apartment where he went and picked

4   up that AK-47 style rifle that was used to

5   intimidate and harm so many people.

6          His conduct didn't stop there.  After he

7   watches those defendants get in the vehicle with

8   that massive firearm, he also goes around the

9   parking lot in the general area and steals a

10  license plate off of a vehicle as was shown during

11  the trial when he attempted to steal a license

12  plate from one of the law enforcement vehicles.

13         His conduct also didn't end there.  When he

14  drove to the store for them to commit the robbery,

15  he initially parked out front to let them go in;

16  and once the robbery commenced, he pulled around

17  back to have a more advantageous path of escape;

18  and as soon as he saw them come out with all the

19  stolen merchandise, he peeled out immediately so

20  that one of the defendants' foot was even dragging

21  as he was leaving.

22         His conduct was substantial, and his

23  conduct was not passive, Your Honor.  But for this

24  defendant being there that day, he was the one who

25  supplied the vehicle, he was the one who took them

1  to get the firearm, and he was the one who enabled

2  them to get to the AT&T store and subsequently

3  escape.  But for all these factors, that crime

4  would have never been committed.

5       That victim who had his life changed on

6  December 3, 2021, would have never been impacted in

7  such a way.  As the Court heard during the trial,

8  that man feared for his life.  In Exhibit 1 you see

9  a photo of that massive AR-15 style rifle pointing

10  directly at the back of his head as he is secluded

11  in a darkish room with no one else around that is

12  not readily accessible by anyone.  He thought he

13  would not make it out that day; and ever since the

14  trial (sic), he had to move away and change his

15  life forever.

16       Those changes happened because of this

17  defendant's actions because he took them to get the

18  gun and because he took them there to commit the

19  robbery.  This case, as I said, is hard because he

20  is young, and that is why the United States is not

21  asking for a high end guideline sentence, but given

22  the nature of the offense and given the steps that

23  he took to make sure this offense was

24  created, especially taking them to get the firearm

25  used during the robbery, a low end guideline

1    sentence of 124 months would be appropriate in this

2    case, Your Honor.  Thank you.

3         THE COURT:  Thank you.  I have a question

4    that's never been quite answered with the facts as

5    they've developed, and that is, so the PSR notes

6    that on December 1 -- this is Paragraph 6 -- the

7    FBI put a tracking device on Mr. Williams' mother's

8    vehicle.  How was that vehicle brought to the

9    attention of the FBI?

10         MR. FUGATE:  It was seen leaving a robbery

11   earlier in the day.  We were not able to pinpoint

12   the defendant in that vehicle that day; however, we

13   were able to confirm that the license plate of the

14   vehicle, which was the same vehicle used in the

15   December 3rd robbery, was used in a prior robbery

16   using Flock cameras, which are video cameras that

17   capture the back of license plates on vehicles.

18   There was Flock evidence used at the trial for the

19   December 3rd robbery, so I think the Court is

20   familiar with that technology.

21         THE COURT:  Yep, okay.  So an inference is

22   at least his mom's vehicle was involved in that

23   robbery?

24         MR. FUGATE:  Correct, so at least a vehicle

25   associated with him supplied in a December 1, 2021,

1 | robbery.

2 | THE COURT: Okay. So the Court will review

3 | the 3553(a) factors that are required. The nature

4 | and circumstances of the offense is where the Court

5 | begins in determining how to impose a sentence

6 | that's sufficient but not greater than necessary.

7 | So as the victim testified at your trial,

8 | Mr. Williams, this was a very disturbing and

9 | life-altering experience for him; and while you may

10 | have thought -- well, let's put it this way: I

11 | know the issue at trial was whether the gun could

12 | be, is essence, put on you, but the photographic

13 | evidence that's contained in the Government's

14 | sentencing memorandum, particularly Exhibit 3,

15 | shows the two other people that were involved in

16 | this robbery standing there holding this very large

17 | assault rifle right next to your car.

18 | Also, the fact that you were observed and

19 | captured on film stealing a license plate from

20 | another vehicle to try to evade apprehension is

21 | another aggravating factor about the nature and

22 | circumstances of the offense.

23 | You haven't been convicted, and it hasn't

24 | been accounted for in the guidelines, of any of the

25 | other robberies. Just for your information, your

1  co-defendants respectively got 25 and 30 years in

2  prison mandatory last week.  Those -- that December

3  1st, 2021, robbery was included.  I believe they

4  both pled guilty to that robbery -- or just Tucker?

5          MR. FUGATE:  Tucker pled guilty to that

6  robbery; Bryant did not.

7          THE COURT:  Anyway, the point of me noting

8  that is you wouldn't have been seen on film trying

9  to steal license plates and with your co-defendants

10  with the AK if law enforcement hadn't put the

11  tracking device on your mom's vehicle, and that's

12  how you were apprehended, and that's how you all

13  were apprehended right after the robbery.  So that

14  evidence was obtained through that work through law

15  enforcement.

16          When you decide to go -- or to assist

17  people who are going into a phone store to hold up

18  the clerk at gunpoint with an AR style rifle, that

19  puts everybody in jeopardy, most specifically the

20  victim of the crime, and it alters their lives

21  permanently because they can't feel safe at work or

22  in their life after that, I suppose.  So that is

23  why the nature and circumstances of the offense are

24  aggravating.

25          Your history and characteristics, it's

1   unfortunate that the track that you were on in
2   Mississippi got derailed by the move to
3   Indianapolis because it seemed as though you were
4   on a good path there being involved in your school,
5   being involved in athletics, keeping focused,
6   keeping busy.  That's really -- that was really a
7   good path, but the path that you took to engage in
8   this robbery was a huge deviation from that path,
9   and -- but I look at some other things that are
10  indicated in the PSR, that you do suffer from some
11  mental illness, and that is a mitigating factor
12  that is not included in the guidelines.
13          I don't know if you had a lack of youthful
14  guidance your entire childhood, but certainly
15  things weren't going well in terms of your
16  supervision while you were here in Indianapolis
17  once you moved here.  Your employment record is
18  also a positive mitigater; and like your
19  co-defendants who have now been sentenced to 25 and
20  30 years respectively, you're a young man.  Your
21  age is such that we know that your brain isn't
22  fully developed, and it will be some time, maybe a
23  matter of four years, maybe a matter of eight
24  years, before it is; but meanwhile, when you're
25  making choices that put the lives of innocent

1    people at risk, that's a problem for the Court.

2          So those mitigating factors are not

3    included in the guideline calculation.  I also

4    think the victim impact that was displayed at the

5    trial was not included.  That's on the aggravating

6    side of matters.  So the Court's conclusion is that

7    a mitigated sentence is warranted on Count 16 but

8    not by much because of the severity and the

9    seriousness of this crime.  So as the Court looks

10   at the guideline range for Count 1 (sic), the Court

11   finds that a sentence of 30 months on Count 1 (sic)

12   is appropriate.  That is added to the 84 months

13   mandatory consecutive, so the total is 114 months.

14         COURTROOM DEPUTY:  You said Count 1.

15         THE COURT:  I'm sorry, Count 16 and 17.  So

16   Count 16, 30 months consecutive to Count 17, 84

17   months for a total of 114 months.  The Court is

18   also ordering three years of supervised release on

19   each of those counts to be served concurrently.

20   The Court is ordering a fine because you will be

21   imprisoned for a considerable period of time, and

22   the Court is imposing an $800 fine.  My goal is

23   to -- pairing that with the $200 mandatory special

24   assessment gets you to a level of $1,000, which I'm

25   told should help in assisting your engagement in

1  prison industries, so that's the reasoning behind

2  the sentence I'm imposing, and the Court will now

3  state the proposed sentence formally.

4       Pursuant to the Sentencing Reform Act of

5  1984, it is the judgment of the Court that the

6  Defendant Robdarius Williams is hereby committed to

7  the custody of the Bureau of Prisons to be

8  imprisoned for a term of 30 months on Count 16 and

9  84 months on Count 17 to be served consecutively

10  producing a total sentence of 114 months for the

11  reasons just stated.  The Court is recommending the

12  following programming:  GED, vocational training,

13  participation in the prison industries program, and

14  also a mental health evaluation and treatment, if

15  necessary.

16       Did you file a notice on the forfeiture on

17  this case, or is forfeiture appropriate?

18       MR. FUGATE:  Forfeiture is not appropriate

19  in this case as all of the items were immediately

20  recovered during the arrest.

21       THE COURT:  Okay.  And what about the

22  rifle?

23       MR. FUGATE:  Forfeiture of that, I believe,

24  was handled in Quintez Tucker and Bryant's case.

25       THE COURT:  Okay.  All right.  So, and

1    there was also $411 in currency seized at the time

2    that's mentioned?

3                MR. FUGATE:  I think as well that was

4    handled in the prior forfeiture.  I don't believe

5    we filed anything specific to this defendant.

6                THE COURT:  Okay.

7                COURTROOM DEPUTY:  Judge, I'm sorry,

8    there's an order.

9                THE COURT:  Is there a preliminary?

10               COURTROOM DEPUTY:  Right here.

11               THE COURT:  Oh, sorry.  Okay.  There is a

12   preliminary order of forfeiture, so the Court will

13   order that the Mossberg rifle 715T, serial number

14   ending 376, and all ammunition recovered with the

15   firearms, which is listed as Asset Identification

16   Number ending in 3772, shall be forfeited in this

17   case.  The money isn't mentioned in that motion, so

18   I'm not going to include that.

19               The defendant shall pay a fine in the

20   amount of $800.  The Court is departing from the

21   fine guideline range based on the defendant's

22   future ability to pay.  The Court finds the

23   defendant does not have the ability to pay interest

24   and waives the interest requirement.  The defendant

25   shall notify the probation officer of any material

1   change in economic circumstances that might affect

2   his ability to pay.

3   　　　　　Restitution is not applicable for the

4   reasons just stated by the Government.  The

5   property was recovered.

6   　　　　　Supervised release is not required by

7   statute; however, as noted, the Court is imposing a

8   three-year term on each of Counts 16 and 17 to be

9   served concurrently upon release from imprisonment

10  based on the nature of the offense and to aid in

11  the defendant's transition into the community.

12  　　　　　While on supervised release, the defendant

13  shall not commit another federal, state or local

14  crime.  You shall cooperate with the collection of

15  a DNA sample.  You shall refrain from any unlawful

16  use of a controlled substances and shall submit to

17  one drug test within fifteen days of placement on

18  supervised release and two periodic tests

19  thereafter as directed by the probation officer.

20  　　　　　The Court is also ordering the additional

21  conditions that were included in the presentence

22  report.

23  　　　　　Number one, you shall report to the

24  probation office in the federal judicial district

25  to which you are released within 72 hours of

1    release from the custody of the Bureau of Prisons.

2              Number two, you shall report to the

3    probation officer in a manner and frequency

4    directed by the Court or probation officer.

5              Number three, you shall permit a probation

6    officer to visit you at a reasonable time, at home

7    or another place, where the officer may

8    legitimately enter by right or consent and shall

9    permit confiscation of any contraband observed in

10   plain view of the probation officer.

11             Number four, you shall not knowingly leave

12   the federal judicial district where you're being

13   supervised without the permission of the

14   supervising court or probation officer.

15             Number five, you shall answer truthfully

16   the inquiries by the probation officer subject to

17   your Fifth Amendment privilege.

18             Number six, you shall not meet, communicate

19   or otherwise interact with a person you know to be

20   engaged or planning to be engaged in criminal

21   activity.  You shall report any contact with

22   persons you know to be convicted felons to your

23   probation officer within 72 hours of the contact.

24             Number seven, you shall reside at a

25   location approved by the probation officer and

1   shall notify the probation officer at least 72

2   hours prior to any planned change in place of --

3   circumstances of residence or employment, including

4   but not limited to changes in who lives there, your

5   job positions, your job responsibilities.  When

6   prior notification is not possible, you shall

7   notify the probation officer within 72 hours of the

8   change.

9          Number eight, you shall not own, possess or

10  have access to a firearm, ammunition, destructive

11  device or dangerous weapon.

12         Number nine, you shall notify the probation

13  officer within 72 hours of being arrested, charged

14  or questioned by a law enforcement officer.

15         Number ten, you shall maintain lawful,

16  full-time employment unless excused by the

17  probation officer for schooling, vocational

18  training or other reasons that prevent lawful

19  employment.

20         Number eleven, you shall make a good faith

21  effort to follow instructions of the probation

22  officer necessary to ensure compliance with the

23  conditions of supervision.

24         Number twelve, you shall not use or possess

25  any controlled substances prohibited by applicable

1    state or federal law unless authorized to do so by

2    a valid prescription from a licensed medical

3    practitioner.  You shall follow the prescription

4    instructions regarding frequency and dosage.

5         Thirteen, you shall submit to substance

6    abuse testing to determine if you've used a

7    prohibited substance or to determine compliance

8    with substance abuse treatment.  Testing may

9    include no more than eight drug tests per month.

10   You shall not attempt to obstruct or tamper with

11   the testing methods.  This condition will address

12   your history of marijuana use.

13        Number fourteen, you shall not knowingly

14   purchase, possess, distribute, administer or

15   otherwise use any psychoactive substances, for

16   example, synthetic marijuana, bath salts, spice,

17   glue, etc., that impairs a person's physical or

18   mental functioning whether or not intended for

19   human consumption.

20        Number fifteen, you shall provide the

21   probation officer access to any requested financial

22   information and shall authorize the release of that

23   information to the United States Attorney's Office

24   for use in connection with the collection of any

25   outstanding fines.

1    Number sixteen, you shall submit to the

2    search by the probation officer of your person,

3    vehicle, office or business, residence and

4    property, including any computer systems and

5    hardware or software systems, electronic devices,

6    telephones and Internet-enabled devices including

7    the data contained in any such items whenever the

8    probation officer has a reasonable suspicion that a

9    violation of a condition of supervision or other

10   unlawful conduct may have occurred or be underway

11   involving you, and that the area to be searched may

12   contain evidence of such violation or conduct.

13   Other law enforcement may assist as necessary.  You

14   shall submit to the seizure of contraband found by

15   the probation officer.  You shall warn other

16   occupants these locations may be subject to

17   searches.

18       It's further ordered that you pay a special

19   assessment of $200.  Payment of the fine and

20   special assessment is due immediately and is to be

21   made directly to the Clerk of the United States

22   District Court.

23       Counsel, do you have any legal objection

24   to the sentence I've proposed, or do you request

25   any further elaboration of my reasons under

1   Section 3553(a) as to the length of imprisonment or

2   as to the length and/or conditions of supervised

3   release?

4           Mr. Fugate?

5           MR. FUGATE:  No, Your Honor.

6           THE COURT:  And Mr. Edgar?

7           MR. EDGAR:  No, Your Honor.

8           THE COURT:  All right.  As I noted, I'm

9   going to order GED.  I feel that that programming

10  is important for you.  Are there any other

11  additional programming -- as well as prison

12  industries.  Is there any additional programming

13  that you would like me to recommend, Mr. Edgar or

14  Mr. Williams?

15          MR. EDGAR:  He's asking about drug

16  counseling as well, Judge.

17          THE COURT:  All right.  Certainly.

18          The Court will recommend that the defendant

19  participates in drug counseling, including RDAP, if

20  eligible; although, he's not, I think, eligible for

21  the residential portion at this time because of the

22  firearm.

23          All right.  I do note that his family ties

24  were raised in the defendant's sentencing

25  memorandum.  I don't find them to be -- I find them

1 │ to be great but not rising to the level of

2 │ mitigation in the case.  I just wanted to address

3 │ that.  With those further explanations, the Court

4 │ will order the sentence imposed as stated.

5 │       Mr. Williams, you can appeal your

6 │ conviction if you believe that your -- well, sorry.

7 │ You can appeal your conviction and your sentence;

8 │ and in order to begin an appeal, you must file a

9 │ Notice of Appeal within 14 days of the entry of

10 │ judgment.  If you cannot afford the filing fee or

11 │ cannot afford to pay a lawyer to appeal for you,

12 │ the Court will appoint a lawyer to representative

13 │ you on appeal.  Upon request, the Clerk of Court

14 │ can prepare and file a Notice of Appeal.

15 │       Do you have any questions about your

16 │ appellate rights or the time limit for filing a

17 │ Notice of Appeal?

18 │       THE DEFENDANT:  Yes, ma'am.  Can I talk

19 │ about the placement?

20 │       THE COURT:  Yes.  Do you have a request?

21 │       THE DEFENDANT:  Terre Haute.

22 │       THE COURT:  Okay.  Have you talked to your

23 │ lawyer about Terre Haute and the conditions at

24 │ Terre Haute?

25 │       THE DEFENDANT:  What's the conditions?

```
1          THE COURT:  Well, some lawyers come in and
2   say anywhere but Terre Haute.  I won't form my
3   opinion.  I will just tell you what some defense
4   lawyers say.  I know it's close to Indianapolis.
5          THE DEFENDANT:  Is there any other prisons
6   near by?  I still want Terre Haute on the list.
7          THE COURT:  Okay.  So the Court will
8   recommend placement -- how about this -- as close
9   to Indianapolis as possible where the programming
10  I've recommended is offered?  Does that make sense?
11         THE DEFENDANT:  Yes, ma'am.
12         THE COURT:  All right.  At the lowest
13  security level possible, okay?
14         THE DEFENDANT:  Thank you.
15         THE COURT:  All right.  You're welcome.
16         And I just want to clarify.  You have the
17  right to appeal your convictions and the right to
18  appeal a sentence if you believe the sentence was
19  illegally or incorrectly imposed.  Do you
20  understand?
21         THE DEFENDANT:  Yes, ma'am.
22         THE COURT:  All right.  And do you have any
23  questions about your appellate rights or the time
24  limits for filing a Notice of Appeal?
25         THE DEFENDANT:  No, ma'am.
```

1            THE COURT:  All right.  Thank you.

2            The Court will order the defendant remanded

3    to the custody of the United States Marshal.

4            COURTROOM DEPUTY:  All rise.

5            (Proceedings adjourned at 10:36 p.m.)

6

7                        * * * * * * *

8

9                CERTIFICATE OF COURT REPORTER

10

11      I, Erin M. Materkowski, hereby certify that the

12   foregoing is a true and correct transcript from

13   reported proceedings in the above-entitled matter.

14

15

16   /s/ Erin M. Materkowski         Date: 10-11-2024
     ERIN M. MATERKOWSKI, RPR, CRR
17   Official Court Reporter
     Southern District of Indiana
18   Indianapolis Division

19

20

21

22

23

24

25

Case 1:22-cr-00063-JMS-MG    Document 193    Filed 09/18/24    Page 1 of 6 PageID #:
Case: 24-2683    Document: 15    1144    Filed: 04/17/2025    Pages: 65
AO 245B (Rev. 09/19) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## Southern District of Indiana

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br><br> ROBDARIUS WILLIAMS | **JUDGMENT IN A CRIMINAL CASE** <br><br> Case Number: 1:22CR00063-003 <br> USM Number: 98078-509 <br><br> James A. Edgar <br> Defendant's Attorney |

**THE DEFENDANT:**

☒ pleaded guilty to count(s) 16 and 17.

☐ pleaded nolo contendere to count(s)  which was accepted by the court.

☐ was found guilty on count(s)  after a plea of not guilty.

The defendant is adjudicated guilty of these offense(s):

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1951(a) and 2 | Interference with Commerce by Robbery | 12/03/2021 | 16 |
| 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 | Brandishing of a Firearm in Furtherance of a Crime of Violence | 12/03/2021 | 17 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)  dismissed on the motion of the United States.

IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

September 17, 2024
_____
Date of Imposition of Sentence:


_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**A CERTIFIED TRUE COPY**
Roger A.G. Sharpe, Clerk
U.S. District Court
Southern District of Indiana
BY _____
Deputy Clerk

Date: 9/18/2024

App. 30

Case 1:22-cr-00063-JMS-MG    Document 193    Filed 09/18/24    Page 2 of 6 PageID #:
Case: 24-2683    Document: 15    1145    Filed: 04/17/2025    Pages: 65
AO245B(Rev 02/16) Judgment in a Criminal Case                                                        Judgment Page 2 of 6

DEFENDANT: Robdarius Williams
CASE NUMBER: 1:22CR00063-003

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **30 months on Count 16, and 84 months on Count 17, served consecutively, for a total of 114 months.**

☒The Court makes the following recommendations to the Bureau of Prisons: **The Court recommends that the defendant be placed as close to Indianapolis, Indiana, as possible, at the lowest security facility deemed appropriate where recommended programming is offered. The Court further recommends that the defendant participate drug treatment to include RDAP; vocational training to include Prison Industries; educational programming, to include programming for GED; and receive a mental health evaluation and participate in mental health treatment if deemed appropriate.**

☒The defendant is remanded to the custody of the United States Marshal.

☐The defendant shall surrender to the United States Marshal for this district:

☐ at

☐ as notified by the United States Marshal.

☐The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant was delivered on _____ to _____
at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

BY: _____
DEPUTY UNITED STATES MARSHAL

Case 1:22-cr-00063-JMS-MG   Document 193   Filed 09/18/24   Page 3 of 6 PageID #:
Case: 24-2683   Document: 15   1146   Filed: 04/17/2025   Pages: 65
AO245B(Rev 02/16) Judgment in a Criminal Case                                    Judgment Page 3 of 6

DEFENDANT: Robdarius Williams
CASE NUMBER: 1:22CR00063-003

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **3 years on each of Counts 16 and 17, served concurrently, for a total of 3 years.**

## MANDATORY CONDITIONS

1.  You shall not commit another federal, state, or local crime.
2.  You shall not unlawfully possess a controlled substance.
3.  You shall refrain from any unlawful use of a controlled substance. You shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You shall make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☒ You shall cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You shall comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You shall participate in an approved program for domestic violence. *(check if applicable)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant shall comply with the conditions listed below.

## CONDITIONS OF SUPERVISION

1.  You shall report to the probation office in the federal judicial district to which you are released within 72 hours of release from the custody of the Bureau of Prisons.

2.  You shall report to the probation officer in a manner and frequency directed by the court or probation officer.

3.  You shall permit a probation officer to visit you at a reasonable time at home, or another place where the officer may legitimately enter by right or consent, and shall permit confiscation of any contraband observed in plain view of the probation officer.

4.  You shall not knowingly leave the federal judicial district where you are being supervised without the permission of the supervising court/probation officer.

5.  You shall answer truthfully the inquiries by the probation officer, subject to your 5th Amendment privilege.

6.  You shall not meet, communicate, or otherwise interact with a person you know to be engaged, or planning to be engaged, in criminal activity. You shall report any contact with persons you know to be convicted felons to your probation officer within 72 hours of the contact.

7.  You shall reside at a location approved by the probation officer and shall notify the probation officer at least 72 hours prior to any planned change in place or circumstances of residence or employment (including, but not limited to, changes in who lives there, job positions, job responsibilities). When prior notification is not possible, you shall notify the probation officer within 72 hours of the change.

8.  You shall not own, possess, or have access to a firearm, ammunition, destructive device or dangerous weapon.

Case 1:22-cr-00063-JMS-MG    Document 193    Filed 09/18/24    Page 4 of 6 PageID #:
Case: 24-2683    Document: 15    1147    Filed: 04/17/2025    Pages: 65
AO245B(Rev 02/16) Judgment in a Criminal Case                                                    Judgment Page 4 of 6

DEFENDANT: Robdarius Williams
CASE NUMBER: 1:22CR00063-003

9.  You shall notify the probation officer within 72 hours of being arrested, charged, or questioned by a law enforcement officer.

10. You shall maintain lawful full-time employment, unless excused by the probation officer for schooling, vocational training, or other reasons that prevent lawful employment.

11. You shall make a good faith effort to follow instructions of the probation officer necessary to ensure compliance with the conditions of supervision.

12. You shall not use or possess any controlled substances prohibited by applicable state or federal law, unless authorized to do so by a valid prescription from a licensed medical practitioner. You shall follow the prescription instructions regarding frequency and dosage.

13. You shall submit to substance abuse testing to determine if you have used a prohibited substance or to determine compliance with substance abuse treatment. Testing may include no more than 8 drug tests per month. You shall not attempt to obstruct or tamper with the testing methods.

14. You shall not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, Spice, glue, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption.

15. You shall provide the probation officer access to any requested financial information and shall authorize the release of that information to the U.S. Attorney's Office for use in connection with the collection of any outstanding fines and/or restitution.

16. You shall submit to the search by the probation officer of your person, vehicle, office/business, residence, and property, including any computer systems and hardware or software systems, electronic devices, telephones, and Internet-enabled devices, including the data contained in any such items, whenever the probation officer has a reasonable suspicion that a violation of a condition of supervision or other unlawful conduct may have occurred or be underway involving you and that the area(s) to be searched may contain evidence of such violation or conduct. Other law enforcement may assist as necessary. You shall submit to the seizure of contraband found by the probation officer. You shall warn other occupants these locations may be subject to searches.

I understand that I and/or the probation officer may petition the Court to modify these conditions, and the final decision to modify these terms lies with the Court. If I believe these conditions are being enforced unreasonably, I may petition the Court for relief or clarification; however, I shall comply with the directions of my probation officer unless or until the Court directs otherwise. Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the condition of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____        _____
Defendant                                                                    Date

_____        _____
U.S. Probation Officer/Designated Witness                        Date

App. 33

AO245B(Rev 02/16) Judgment in a Criminal Case                                                    Judgment Page 5 of 6

DEFENDANT: Robdarius Williams
CASE NUMBER: 1:22CR00063-003

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $200.00 | | $800.00 | | |

☐ The determination of restitution is deferred until . An *Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **Totals** | | | |

☐ Restitution amount ordered pursuant to plea agreement $

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☒ the interest requirement is waived for the ☒ fine ☐ restitution

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Case 1:22-cr-00063-JMS-MG    Document 193    Filed 09/18/24    Page 6 of 6 PageID #:
Case: 24-2683    Document: 15    1149    Filed: 04/17/2025    Pages: 65
AO245B(Rev 02/16) Judgment in a Criminal Case                                    Judgment Page 6 of 6

DEFENDANT: Robdarius Williams
CASE NUMBER: 1:22CR00063-003

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☐ Lump sum payment of $ _____ due immediately, balance due
      ☐ not later than _____, or
      ☐ in accordance with    ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, ☐ F or ☐ G below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ If this case involves other defendants, each may be held jointly and severally liable for payment of all or part of the restitution ordered herein and the Court may order such payment in the future. The victims' recovery is limited to the amount of loss, and the defendant's liability for restitution ceases if and when the victims receive full restitution.

**G** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐     Joint and Several

| Defendant and Co-Defendant Names and Case Numbers *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee |
|---|---|---|---|
| | | | |

☐     The defendant shall pay the cost of prosecution.

☐     The defendant shall pay the following court cost(s): _____

☒     The defendant shall forfeit the defendant's interest in the following property to the United States: A Mossberg 715T Rifle, bearing EMC3686376; and all ammunition.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.