No. 24-2683

In the
# United States Court of Appeals
## for the Seventh Circuit

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ROBDARIUS WILLIAMS,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Southern District of Indiana.
No. 1:22-cr-00063-JMS-MG-3 — Hon. Jane Magnus-Stinson, *Judge*.

---

### BRIEF OF THE UNITED STATES OF AMERICA

---

THOMAS E. WHEELER II
United States Attorney


Isaac Jordan
Special Assistant United States Attorney


United States Attorney's Office
10 W. Market Street, Suite 2100
Indianapolis, IN 46204
(317) 226-6333

## TABLE OF CONTENTS

**Page No**.

JURISDICTIONAL STATEMENT ................................................................. 1

STATEMENT OF THE ISSUE ..................................................................... 2

STATEMENT OF THE CASE ........................................................................ 3

SUMMARY OF THE ARGUMENT ................................................................. 12

ARGUMENT .................................................................................................. 14

    I.    The Evidence was Sufficient to Support the Finding that Williams
        Had Advance Knowledge His Confederates Would Brandish a
        Firearm During the Robbery of the AT&T Store...........................………14

        A.    Standard of Review........................................................................14

        B.    The Jury's Verdict is Consistent with Case Law, Applicable
                Statutes, and the Proper Jury Instructions the Judge Gave.......15

        C.    Precedent Shows That Williams Cannot Reason His Way
                Past His Burden...........................................................…………….19

        D.    Caselaw From Other Circuits Confirms that Williams
                Cannot Meet His Burden..............................................................26

CONCLUSION................................................................................................ 34

# TABLE OF AUTHORITIES

**Cases**                                                    **Page No.**

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver,*
  *N. A.,* 511 U.S. 164 (1994) ............................................................. 16

*Clark v. United States*, 680 F. App'x 470 (7th Cir. 2017) ..................... 2, 29, 30

*Farmer v. United States*, 867 F.3d 837 (7th Cir. 2017) ............................ 29, 30

*Greer v. United States*, 593 U.S. 503 (2021) ...................................................... 15

*Parker v. United States*, 801 F.2d 1382 (D.C. Cir. 1986) ................................. 25

*Rosemond v. United States*, 572 U.S. 65 (2014) ........................................passim

*United States v. Allen*, 390 F.3d 944 (7th Cir. 2004) ....................................... 33

*United States v. Armour*, 840 F.3d 904 (7th Cir. 2016) ...........................passim

*United States v. Atkins*, 842 F. App'x 524 (11th Cir. 2021) ............................ 27

*United States v. Bowen*, 527 F.3d 1065 (10th Cir. 2008) ................................. 32

*United States v. Brown*, 724 F.3d 801 (7th Cir. 2013) ..................................... 32

*United States v. Brown*, 973 F.3d 667 (7th Cir. 2020) ..................................... 26

*United States v. Donnell*, No. 21-3957, 2022 WL 10219848
  (6th Cir. Oct. 18, 2022) ................................................................................. 27

*United States v. Grayson Enters., Inc.*, 950 F.3d 386 (7th Cir. 2020) ............. 14

*United States v. Henning*, 785 F. App'x 430 (9th Cir. 2019) .......................... 28

*United States v. Johnson*, 702 F. App'x 349 (6th Cir. 2017) ........................... 26

*United States v. Lawson*, 810 F.3d 1032 (7th Cir. 2016) ..................... 24, 25, 26

*United States v. Lettiere*, 640 F.3d 1271 (9th Cir. 2011) ...................................... 32

*United States v. Meadows*, 91 F.3d 851 (7th Cir. 1996) .................................. 14

*United States v. Moore*, 572 F.3d 334 (7th Cir. 2009.)..................................... 30

*United States v. Mota*, 685 F.3d 644 (7th Cir. 2012) ...................................... 14

*United States v. Powell*, 576 F.3d 482 (7th Cir. 2009)..................................... 15

*United States v. Pritchard*, 692 F. App'x 349 (9th Cir. 2017) .................. 27, 28

*United States v. Rivera*, 901 F.3d 896 (7th Cir. 2018)..................................... 30

*United States v. Rock*, 370 F.3d 712 (7th Cir.2004)........................................ 33

*United States v. Seabrooks*, 839 F.3d 1326 (11th Cir. 2016) .......................... 17

*United States v. Sheneman*, 682 F.3d 623 (7th Cir. 2012) ....................... 14, 15

*United States v. Soto*, 794 F.3d 635 (6th Cir. 2015)........................................ 27

*United States v. Thomas*,933 F.3d 685 (7th Cir. 2019)................................... 24

*United States v. Vallar*,635 F.3d 271 (7th Cir.2011) ...................................... 14

**Statutes**

18 U.S.C. § 2...................................................................................passim

18 U.S.C. §§ 924(c) ..........................................................................passim

18 U.S.C. §§ 924(c)(1)(A)............................................................... 13, 15

18 U.S.C. § 924(c)(1)(A)(i) .................................................................. 11

18 U.S.C. §§ 924(c)(1)(A)(ii) ........................................... 3, 11, 19, 27

18 U.S.C. § 924(c)(4) ........................................................................... 10

iii

18 U.S.C. § 3553(a) ........................................................................... 11

18 U.S.C. §§ 1951(a) ........................................................................... 8

# JURISDICTIONAL STATEMENT

The appellant's jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUE

Whether the evidence was sufficient to support the jury's verdict convicting Robdarius Williams of aiding and abetting the brandishing of a firearm in furtherance of a crime of violence, where Williams: (1) drove his soon-to-be-brandishing confederate to pick-up the firearm they would use to rob the store; (2) drove for 45 minutes to the scene of the crime, during which time Williams's confederates passed the gun around; (3) drove past the store to "case" it; (4) watched the soon-to-be-brandisher enter the store visibly holding the gun; (5) appeared to give his confederates instructions over speaker phone during the robbery; and (6) drove the group away from the crime after the rifle was brandished.

## STATEMENT OF THE CASE

This appeal stems from the conviction, following a jury trial, of Robdarius Williams for aiding and abetting the brandishing of a firearm in furtherance of a crime of violence under 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.[1] (R. 1; PSR ¶ 2.)

In 2021, law enforcement was conducting a long-term investigation into multiple armed cellphone store robberies in Indianapolis. (T. 33.) As a part of that investigation, officers began surveilling Williams' car—a Chevy Malibu registered to his mother—because they believed the car was involved in one such robbery. (T. 33-34; PSR ¶ 6.)

Two days into the surveillance, Williams, Quintez Tucker, and Darrelle Risper participated in the armed robbery of an Indianapolis AT&T store. (T. 35; A. Br. 3.)  They used Williams' Malibu to effectuate the robbery, which entailed (1) picking-up, among other things, a rifle; (2) scouting the AT&T store; (3) robbing the store with the rifle; and (4) fleeing the scene. (T. 33-34, 40, 51-52, 55-57, 59-61, 72, 93, & 101; PSR ¶¶ 6-14.)

---

[1]Throughout this brief, the government will make the following references: (R. = District Court Docket Number); (T. = Trial Transcript); (S. T. = Sentencing Transcript); (PSR = Presentence Investigation Report); (A. Br. = Appellant's Brief).

### *Armed Robbery of the AT&T Store*

On the afternoon of the robbery, Williams first drove the Malibu to a local high school where he picked up Tucker. (T. 36-37; PSR ¶ 7.) After that, they drove to Tucker's apartment, where Tucker retrieved a large AR-style rifle. (T. 36-37, 40, & 135; PSR ¶¶ 7 & 9.)

Andrew McDonald, a detective with the Indianapolis Metropolitan Police Department, was surveilling Tucker's apartment complex when he saw "[t]wo individuals c[o]me from the back of the apartment building around to the front[, o]ne of them was carrying a long rifle[.]" (T. 69 & 77:17-19.) Despite being "probably 75 feet away[]" he could still see the rifle given how big it was. (T. 78:3-8; PSR ¶ 9.)

Williams was not idle while Tucker was retrieving the long gun. He walked around the parking lot at the apartment complex, looking at multiple parked cars, ultimately stealing another car's license plate. (T. 71-72; PSR ¶ 8.)

Williams, Tucker, and a third person next left the apartment complex with Tucker in the back passenger seat. (T. 42-43, 78, & 137; PSR ¶ 9.) They then drove to a local gas station, where Risper was seen in the vehicle, and then to a public park where they met up with someone in a red Ford Focus. (T. 41-43; PSR ¶¶ 9 & 10.) During their trip, the rifle was passed between Tucker

and Risper. (T. 77-79, 93, 136-137, 142-143, 183-184, 190-191, & 201; A. Br. 6.) Williams replaced the Malibu's license plate with the stolen one, and they left the park and drove 45 minutes from the northside of Indianapolis to a southside commercial area. (T. 43-46, & 51; PSR ¶¶ 8-11.)

They entered the shopping center via Emerson Avenue. (T. 51: 18-21 & 52:21-24.) The center included, among various other stores, a Verizon store and AT&T store. (T. 51-52 & 55-57; PSR ¶¶ 11 & 12.) Once there, the Malibu scouted the Verizon and AT&T stores, driving past each store multiple times and periodically reconvening with the red Ford Focus. (T. 51-55 & 90-91; PSR ¶ 12.)

Austin Arndt, Detective for the Fishers Police Department, was surveilling this activity and believed "that the vehicle [was] casing this Verizon, getting an idea for the potential employees, customers inside the store and evaluating whether or not this is a good place to commit a robbery." (T. 30 & 55:7-11.) After this apparent "casing," Williams, Tucker, and a third individual (later identified as Risper) decided on the AT&T store, which had just one employee working that day. (T. 61:5-11; *see also* T. 51-58, 91, & 113-114; PSR ¶¶ 13 & 14.)

Williams parked the Malibu outside the AT&T store, and Tucker and Risper exited the car and began walking towards the store. (T. 57-58 & 79; PSR

¶ 13.) As they walked, Detective Andrews could see—based on the outline of a barely concealed gun that extended down to the knee of one man's sweatpants—that they had the rifle. (T. 93:3-12; PSR ¶¶ 13 & 14.) Also clearly visible was the fact that Risper was walking in a way to compensate for the large gun. (*Id.*)

Tucker and Risper entered the store at 5:48 p.m., and Risper quickly pulled the rifle from his clothes and pointed it at the AT&T employee, Nathanial Ray. (T. 57, 93, 114, & 122; PSR ¶ 13.) While the gun was pointed at Ray, Tucker and Risper gave instructions and threatened Ray's life. (T. 114, 118, & 122; PSR ¶ 13.) Ray "was completely terrified," and his fear was "absolutely" caused by the large firearm. (T. 118:5-10.)

While Ray was complying, he overheard Tucker and Risper talking to someone on speakerphone who had a noticeably deeper voice than Tucker and Risper and was giving directions to them. (T. 61-62 & 119; PSR ¶ 14.) Ray heard the person on speakerphone direct Tucker and Risper to tell Ray what to do, specifically about "what kinds of devices [] to get." (T. 119.) The person on speakerphone also ". . . asked [Ray] questions about the back entrance [] and if it connected to Emerson Avenue." (*Id.*) Ray, fearing for his life, complied with the robbers' instructions and answered their questions. (T. 93, 117-119;

PSR ¶ 14.) At 5:50 p.m. Williams drove the Malibu to the side store near Emerson Avenue. (T. 58-59 & 82; PSR ¶¶ 13 & 14.)

Roughly four minutes later, Tucker and Risper then exited holding a box of stolen merchandise and made their way around to the side of the AT&T store, where Williams was waiting for them in the Malibu. (T. 58, 79, 86, & 94; PSR ¶ 14.) Tucker and Risper got into the car, rifle in tow, and the three of them drove away using Emerson Avenue. (T. 59-61, 79, 93, & 101; PSR ¶¶ 14 & 15.)

Less than two miles from the AT&T store, officers stopped the vehicle and apprehended them. (T. 58-61; PSR ¶ 15.) In searching the Malibu, officers found, in addition to items stolen from the AT&T store, a rifle, black bandana and a blue latex glove. (T. 61 & 101; PSR ¶ 15.)

### *Charges, Trial, and Sentencing*

Williams was arrested on state charges on the day of his arrest in 2022 (those charges were later dismissed). (PSR ¶¶ 1-4.) Thereafter, a federal grand jury indicted Williams. (R. 1; PSR ¶ 2.) The indictment included 17 Counts, and named Williams in Counts 1, 16, and 17.[2] (PSR ¶ 2.)

---

[2] The parties agreed to the form of the Redacted Indictment and to the renumbering of Counts 16 and 17 to Counts 1 and 2 for purposes of trial and to avoid confusion to the jury as to seemingly missing counts. (PSR ¶ 5.)

Count 1 of the operative indictment alleged that Williams aided and abetted interference with commerce by robbery, in violation of 18 U.S.C. §§ 1951(a) and 2. (PSR ¶ 2.) Count 2 alleged that he aided and abetted the brandishing of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2. (*Id*.) The remaining Counts charged the co-defendants with multiple counts of robbery, in violation of 18 U.S.C. § 1951(a) and 2; and multiple Counts of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). (*Id*.)

A jury trial began on May 13, 2024, and lasted two days. (R. 137 & 138.) Over the course of the trial, the government admitted eye-witness testimony, surveillance evidence, seized physical evidence, and more. (*See* R. 206-207.)

Law enforcement testimony demonstrated that Williams provided the car and acted as the driver in facilitating the crime and attempted getaway. (T. 34, 36-37, 40, 42-44, 51-61, 71-72, 79, & 94.) Law enforcement testimony further demonstrated the size of the rifle, specifically showing that it was visible with the naked eye from as far away as 100 yards. (T. 78 & 136.) Ray also testified to the size of the firearm used in the robbery and the fear it instilled. (T. 118.)

The government also admitted photographic and video evidence showing that Tucker retrieved the rifle from his apartment and entered Williams's

Malibu, and demonstrating that at some point prior to exiting the vehicle to commit the robbery, the rifle was passed from Tucker to Risper, after which Tucker and Risper exited the vehicle and robbed the AT&T store. (*E.g.*, T. 73, 115, 120, & 136.) The victim further described the robbery, including the role of the instructive voice on the speakerphone. (T. 61-62 & 119.)

During closing argument, the government emphasized the "common sense" jury instruction: "[y]ou are allowed to make reasonable inferences so long as they are based on the evidence." (T. 179-180.) The government then laid out its' burden for Count 2, specifically, as relevant to this appeal, the definition of "advance knowledge" and how the government must demonstrate Williams had advance knowledge that one of his confederates would brandish a firearm during the commission of the crime of violence. (T. 183-185.)

On this point, the government explained the connection with the individual on the speakerphone during the robbery, who was giving Tucker and Risper instructions. (T. 178-179 & 187.) The government noted that the person on speakerphone had a deep voice and that, according to Detective Arndt, Williams too had a distinctively low voice. (T. 61-62, 119, & 178-179.) The government also pointed out how the person on the speakerphone asked about using Emerson Avenue as an exit route and how Williams drove the

9

Malibu around to the side of the AT&T store, where after the robbery, the Malibu exited onto Emerson Avenue. (T. 57-58 & 179.)

After the close of evidence and closing arguments, the court, in addition to the "common sense" instruction, instructed that (to convict as to Count 2) the jury must find beyond a reasonable doubt:

> (1) that the defendant had advance knowledge that another participant would brandish a firearm in furtherance of the crime of interference with commerce by robbery; and (2) that the defendant, having advance knowledge, intentionally facilitated the brandishing of the firearm in furtherance of the crime of interference with commerce by robbery.

(R. 137-2 at 20; *see also* 109, 111, & 138.)

The court also instructed that, if they determined that the government failed to prove either of the above elements, the jury should alternatively consider "whether the defendant aided the possession of a firearm in furtherance of a crime of violence, which is the lesser included offense of aiding the brandishing of a firearm in furtherance of a crime of violence." *Id*.

The instructions also provided the following definitions:

1. "[t]o 'brandish' a firearm means to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." *Id*. at 27; *See also* 18 U.S.C. § 924(c)(4).

2. "[a] person possesses a firearm 'in furtherance of' a crime if the firearm furthers, advancers, moves forward, promotes or facilitates the crime. The mere presence of a firearm at the scene of a crime is insufficient to

establish that the firearm was possessed 'in furtherance of' the crime. The must be a connection between the firearm and the crime." *Id*. at 30.

3.  "'[a]dvance knowledge' means knowledge at a time the defendant had a realistic opportunity to either attempt to alter the plan or to withdraw from it. It is sufficient if the knowledge is gained in the midst of the underlying crime, as long as the defendant had a realistic opportunity to withdraw but continued to participate in the crime." *Id*. at 29.

After deliberation, the jury returned a verdict of guilty as to both Counts 1 and 2. (R. 138, 139, & 140; PSR ¶ 5.)

The court sentenced Williams a few months later.  After reviewing the 18 U.S.C. § 3553(a) factors, the court imposed a sentence of 30 months on Count 1 and 84 months on Count 2, to be served consecutively, producing a total sentence of 114 months in prison. (S. T. 18.) Given the brandishing of a firearm in furtherance of a crime of violence, Count 2 came with a 7-year mandatory minimum.  18 U.S.C. § 924(c)(1)(A)(ii); (S. T. 5 & 18.)  If the conviction had involved mere possession, rather than brandishing, the mandatory minimum would have been 5 years. 18 U.S.C. § 924(c)(1)(A)(i);(S. T. 5 & 18.)

## SUMMARY OF THE ARGUMENT

*Armour* and *Rosemond* support the jury's verdict. Williams's arguments to the contrary neglect key evidence and rely on a purported logical problem that is not actually present here. This Court should not disturb the jury's reasonable decision.

The evidence showed that Williams aided and abetted his confederates in the armed robbery of the AT&T store. He drove to pick up his confederates, then to gather materials, including the soon-to-be brandished firearm. He watched them pass the large rifle around as he drove them to scout the soon-to-be robbed AT&T store; he dropped them off at the AT&T store; he apparently spoke to them (and to the terrified victim) during the robbery; and he picked them up afterward and drove them away from the scene.

The firearm was an AR-style rifle, large enough to be seen at a distance of roughly 100 yards. And, given its size, the possessing confederate noticeably struggled to stabilize it while walking towards AT&T store. Upon entering the AT&T store Williams' confederates immediately brandished the rifle and continued to brandish it throughout the robbery. Contrary to Williams's arguments, the record allows for the reasonable inference that during the robbery, Williams called his confederates on speakerphone and asked the AT&T employee questions. Nothing in the record suggests that Williams was

12

surprised that his friends had cowed the employee into frightened compliance. The jury made the reasonable inference that Williams knew exactly how his confederates had used the gun inside the store.

The jury was allowed to convict on that evidence. A relevant instruction informed them of the "advance knowledge," "possession", and "brandishing" aspects of the necessary proof under both 18 U.S.C. §§ 924(c)(1)(A) and 2. They followed that instruction reasonably.

Instructing the jury on the possession crime in § 924(c)(1)(A) did not "eviscerate" the distinction between the two. On the contrary, doing so enabled the jury to draw a rational distinction. Williams hopes to show a problematic overlap between the "brandishing" and "possession" crimes here, but to the extent such a problem could theoretically arise, it is not present here given the facts.

Williams cannot surmount the nearly insurmountable hurdle he faces. His sufficiency of the evidence argument fails.

The Court should affirm.

# ARGUMENT

## I.    The Evidence was Sufficient to Support the Finding that Williams had Advance Knowledge His Confederates Would Brandish a Firearm During the Robbery of the AT&T Store

### A.    Standard of Review

When evaluating a defendant's sufficiency-of-the-evidence claim, this Court views the evidence is "in the light most favorable to the prosecution, making all reasonable inferences in its favor, and affirm the conviction so long as any rational trier of fact could have found the defendant to have committed the essential elements of the crime." *United States v. Mota*, 685 F.3d 644, 650 (7th Cir. 2012) (citing *United States v. Vallar,* 635 F.3d 271, 286 (7th Cir.2011)) (internal quotation omitted). "This is a 'nearly insurmountable' hurdle even when the argument is preserved." *Id.* (citing *United States v. Grayson Enters., Inc.*, 950 F.3d 386, 405 (7th Cir. 2020)). "The hurdle is even higher where a defendant fails to move for judgment of acquittal, in which case we again review for plain error." *Id.* (citing *United States v. Sheneman*, 682 F.3d 623, 628 (7th Cir. 2012)).

Williams did not move for judgment of acquittal. Accordingly, this Court should review for plain error. *Id.* "The 'requirements for plain error are met with respect to sufficiency of the evidence claims if the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction would be shocking.'" *Id.* (quoting *United*

14

*States v. Meadows*, 91 F.3d 851, 855 (7th Cir. 1996)); *see Sheneman*, 682 F.3d at 628 ("Under the plain error standard, [the defendant] must show that 'a manifest miscarriage of justice will occur if his conviction is not reversed.'" (quoting *United States v. Powell*, 576 F.3d 482, 491–92 (7th Cir. 2009))).

Under plain error review, Williams must show: (1) "an error"; (2) that is "plain"; (3) that affected his "substantial rights": and (4) that "had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Id.* (citing *Greer v. United States*, 593 U.S. 503, 507–08 (2021)) (cleaned up).

### B. The Jury's Verdict is Consistent with Case Law, Applicable Statutes, and the Proper Jury Instructions the Judge Gave

The evidence supported the jury's conclusion that Williams knew his confederates would brandish a firearm during the commission of the crime of violence. Their verdict—that he was thus guilty of aiding and abetting the brandishing of a firearm in furtherance of a crime of violence—was reasonable.

18 U.S.C. § 924(c)(1)(A) makes it a crime for "any person who, during and in relation to any crime of violence or drug trafficking crime [] for which the person may be prosecuted in court of the Unite States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime or drug trafficking crime— . . . (ii)

if the firearm was brandished, be sentenced to a term of imprisonment of not less than 7 years . . . ." *See* 18 U.S.C. § 924(c)(1)(A)(ii).

The conviction here turns on the interaction between that crime and the aider and abettor crime of 18 U.S.C. § 2: "those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime." *Rosemond v. United States*, 572 U.S. 65, 71 (2014) (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.,* 511 U.S. 164, 181 (1994)).

In *Rosemond*, the Supreme Court held that to be guilty of the § 924(c) offense, the defendant must have intended the commission of the § 924(c) offense—that a firearm be used in the commission of the offense—even if he did not bring the firearm to the scene. *Id*. at 77-78. In other words, the defendant's knowledge of the firearm must be advance knowledge. *Id*. at 78.

Of note here, "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had [advance] knowledge." *Id*. at 78 n.9. "Put another way, the aider and abettor has the requisite criminal intent where his knowledge of the confederate's use of a firearm is sufficiently in advance such that he can 'make the relevant legal (and indeed moral) choice'

to participate in the entire § 924(c) offense." *United States v. Seabrooks*, 839 F.3d 1326, 1335 (11th Cir. 2016) (quoting *Rosemond*, 572 U.S. at 78 n.9).

The jury's verdict is consistent with *Rosemond*.  Contrary to Williams' arguments, the evidence established his advance knowledge that the firearm would be brandished in furtherance of the AT&T store robbery:

(1) Williams' vehicle (registered to his mother) was already under surveillance for its believed involvement in prior cellphone store robberies where a firearm was brandished. (T. 33-34; PSR ¶ 6.)

(2) Williams drove his soon-to-be-brandishing confederate to pick-up the subject firearm and then to the scene of the crime where the firearm was brandished. (T. 36-37, 40, 43-46, 51, 93 & 122; PSR ¶¶ 6-11.)

(3) At some point after picking up the firearm from Tucker's apartment and prior to the robbery, the gun was passed between Tucker and Risper, which, based on the size of the firearm, was most likely known by Williams. (T. 77-79, 93, 136-137, 142-143, 183-184, 190-191 & 201-202; PSR ¶ 9; A. Br. 6.)

(4) Williams watched the brandisher enter the store visibly holding the gun. (T. 57-58, 79, 93; PSR ¶¶ 13 & 14.)

(5) Williams appeared to give his confederates instructions and ask the victim questions over speaker phone during the robbery. (T. 61-62, 114, & 118-119; PSR ¶¶ 13 & 14.)

(6) Moments after the individual on speaker phone asked the victim questions regarding the back of the AT&T store, Williams drove his vehicle to the back of the AT&T store near Emerson Avenue. (T. 58, 61-62, 79-82, 94, 119; PSR ¶ 14.)

(7) Williams drove the group away from the crime after the rifle was brandished. (T. 59-61 & 79; PSR ¶ 14.)

Given that evidence, it made sense for the jury to believe Williams knew the plan from the start to the finish.  Indeed, the drive from the gun pick-up to the robbery location took approximately 45 minutes and then  a slow casing of

the AT&T store.  (T. 43-46 & 51-55; PSR ¶ 8-11.)  The fact that they drove so far and also cased the joint and made a stop at the park, plus Williams' involvement with the license plate and as planned getaway driver, all help underscore that they were all on the same page, which would leave a reasonable juror plenty of room to infer that they were on the same page about the brandishing, along with everything else.

It is also worth pausing over the "speakerphone voice" question. Williams hopes to cast doubt on the notion that he was the person on the phone, (A. Br. 17), but he must do more than raise the specter of another imaginable speaker.  His burden is to show that it was implausible for the jury to infer that he was the deep-voiced man on the phone.  That he cannot do.

And while Williams is correct that the evidence did not show a direct conversation about brandishing over the phone, the evidence did show that Ray spoke with the phone voice (again, more likely than not Williams).  That interaction gave Williams a firsthand opportunity to hear Ray's grave fear during the robbery.  The jury was allowed to conclude based on that evidence—mixed with Williams's uncontested knowledge that Risper took the gun inside the store—that the robbers were threatening Ray with the gun.

On a plain assessment of the evidence in the record set against the standard of review, this Court should affirm the jury's verdict that Williams

aided and abetted the brandishing of a firearm in furtherance of a crime of violence under 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2, as there was sufficient evidence presented at trial for that verdict. Certainly, Williams cannot meet his burden under the plain error standard to show that the conviction was a miscarriage of justice, given the plentiful evidence and the reasonable inferences one can draw from it.

### C.    Precedent Shows that Williams Cannot Reason His Way Past His Burden

Williams does not fully grapple with the evidence but rather seeks a way around it. He admits "[t]he robbery of the AT&T store occurred and [he] clearly participated in the robbery." (A. Br. 13.) In his view, however, this case points up an unacceptable tension: "[He] took an affirmative act in furtherance of § 924(c) crime involving possession of a firearm. But the government failed to prove his intent extended to the entire crime of brandishing the firearm." (A. Br. 14.)

But that tension is not present here. The evidence enabled the jury to draw inferences that Williams' knowledge went beyond possession to include brandishing. His involvement in the crime from the outset; his participation in the acquisition of the gun; the long drive when his friends swapped the gun and when the three planned which store to rob; and the gun's large size were

all plain to observe for the jury. (T. 36-37, 40, 55, 77-79, 118, 136-137, 183-184, 190-191, & 201-202.)

Add to that additional evidence from which jurors could infer his understanding that brandishing was the plan and was what happened: he was close enough to see how awkwardly Risper walked with the gun concealed (which allows for a reasonable inference that it would soon be un-concealed); circumstances allowed a reasonable inference that he was giving his friends instructions while on speakerphone; those same circumstances allowed the reasonable inference that he was asking a noticeably terrified AT&T employee questions during the robbery (thus allowing for the inferences that he knew the plan, which included brandishing the gun) and still drove the getaway car. (T. 57-58, 61-62, 79, 86, 93-94, 101, & 118-119; PSR ¶¶ 13 & 14.)

Williams admits he took an affirmative act and had the requisite knowledge that a firearm would be possessed. (A. Br. 14-15.) But he still believes there was no evidence demonstrating his advance knowledge of brandishing. (*Id*.)

Williams's argument misses a key distinction between this case and *Armour*. As this Court in *Armour*, citing *Rosemond*, explained:

> To apply the brandishing enhancement, the jury should have been instructed that the government needed to prove beyond a reasonable doubt that Armour knew in advance not only that [his confederates] would be carrying firearms but also that they would

20

be brandishing them. *See Rosemond* [at 80-83] (to find defendant guilty of aiding and abetting co-defendant's use of firearm in crime of violence under § 924(c), jury would need to find that defendant had advance knowledge of intended use of firearm).

*United States v. Armour*, 840 F.3d 904, 911 (7th Cir. 2016);

Of course, Williams does not contest the instructions here, only the evidence. But it matters that, in *Armour*, this Court clarified that the jury should have been instructed that "the government needed to prove beyond a reasonable doubt that Armour knew in advance not only that [his co-defendants] would be carrying firearms but also that they would be brandishing them." *Id.* at 911.

Here, fulfilling that need, Final Instruction No. 17 stated:

[i]n order for you to find the defendant guilty of this charge, the government must prove each of the following elements beyond a reasonable doubt: 1. That the defendant had advance knowledge that another participant would brandish a firearm in furtherance of the crime of violence of interference with commerce by robbery; and 2. That the defendant, having such knowledge, intentionally facilitated the brandishing of the firearm in furtherance of the crime of interference with commerce by robbery.

(R. 137-2 at 20; *see also* 109, 111, & 138.)

That instruction was consistent with this Court's suggested instruction in *Armour*, and the evidence presented by the government is consistent with the example provided by this Court's in *Armour*.

21

Beyond that, Williams' comparison to *Armour*'s facts does not paint a fair picture of what the jury had in front of it here. In *Armour*, "the jury heard evidence that Armour told [a confederate] to bring his firearm, that Armour led the enterprise, and that [Armour's confederates] actually brandished firearms during the attempted robbery. We have no doubt that this evidence could easily support a finding that Armour aided and abetted the brandishing." *Armour*, 840 F.3d at 911.

*Armour* gave three evidentiary examples which, together, are sufficient for a finding of advance knowledge of brandishing for an aider and abettor. *Id.* Here, the government presented more than sufficient evidence to meet the standard this Court set forth in *Armour*:

First, in *Armour*, the jury heard evidence that Armour told his confederate to bring a firearm. *Id.* Here, Williams picked up Tucker and drove him to his apartment complex where Tucker retrieved his firearm (where Williams retrieved a license plate) and together they drove to the scene of the robbery. (T. 36-37, 40, 43-45, 51, & 71-72; PSR ¶¶ 7-11.) Further, Williams admits that he knew his confederates would possess a firearm during the AT&T store robbery. (A. Br. 14-15.)

Second, the *Armour* jury heard evidence that Armour led the enterprise. *Armour*, 840 F.3d at 911. Here, Williams supplied his vehicle as transportation

22

for gathering materials and to and from the scene, he attempted to mask the vehicle by replacing its' license plate, and the jury heard evidence of an individual, seemingly Williams, on speakerphone directing Tucker and Risper. (T. 36-37, 40, 42-45, 51, 57-58, 77, 79, 136, 178, 183-184, & 201-202; PSR ¶¶ 7-11 & 13.)  Williams admits he "was an active participant in the robbery," that "[h]e drove the car, picked up Tucker and Risper, drove to pick up the gun, drove to the location, scouted various stores, and dropped off the robbers at the AT&T store." (A. Br. 16.) The evidence demonstrates that: (1) had Williams not participated in any manner, the robbery would likely look different and may not have occurred at all, and (2) a reasonable jury could infer that the individual directing the robbery on speakerphone was Williams.

Third, in *Armour*, as here, the firearm was brandished. (T. 93, 114, & 122; PSR ¶ 13); *Armour*, 840 F.3d at 911.

This Court "had no doubt" that the evidence in *Armour* could "easily" lead to a finding of aiding and abetting the brandishing of a firearm during a crime of violence. *Armour*, 840 F.3d at 911. Here, guided by *Armour*, the government presented sufficient evidence for the jury to reasonably find Williams possessed advance knowledge that his confederates would brandish.

Therefore, in view of *Rosemond* and *Armour*, the evidence was sufficient for the Williams jury to reasonably conclude he had advance knowledge that a firearm would be brandished.

Several precedents confirm that the jury's decision here was rational. As an initial matter, *United States v. Thomas*, 933 F.3d 685 (7th Cir. 2019), demonstrates the reasonableness of the jury instruction here. The Court explained that to apply the brandishing enhancement to Thomas, the jury needed to find beyond a reasonable doubt that Thomas knew in advance not only that his codefendant would be carrying a firearm but also that he would be brandishing it. *Id*. at 695 (citing *Armour*, 840 F.3d at 911). This Court affirmed the district court, finding the *Thomas* jury instructions properly conveyed the government's burden to prove advance knowledge of brandishing to trigger the seven-year statutory-minimum sentence. *Id*. at 696.

*United States v. Lawson*, 810 F.3d 1032 (7th Cir. 2016), is also instructive. Although (like *Armour*) dealing with a faulty instruction not present here, *Lawson* shows that reversal would be inappropriate. Lawson argued that the only relevant evidence about the "firearm" in question came from a witness who was not sure whether the object was a firearm or well-made replica. *Id*. at 1039. Under plain error review, the Court found that, given

24

the evidence, the jury instruction error did not affect Lawson's substantial rights. *Id*. at 1041.

Key here, the Court underscored the fact that Lawson and his confederate had a "'division of labor already mapped out' before entering the post office: the accomplice would neutralize threats, while Lawson would steal property." *Id*. Lawson and his confederate had forethought to bring masks to hide their faces, indicating a plan to rob the post office. *Id*. "It is implausible that such a mid-day robbery plan would not have included a firearm designed to influence and threaten the employees or patrons that are sure to be there." *Id*. (citing *Parker v. United States*, 801 F.2d 1382, 1385 (D.C. Cir. 1986)).

That Williams's confederates would not brandish a firearm is just as implausible here. As in *Lawson*, the evidence showed a thorough planning effort, which Williams joined and which focused on getting a large firearm (as well as swapping license plates). (T. 71-72 & 118.) As in *Lawson*, Williams and his confederates planned to rob the AT&T store while it was open for business, and they cased store together. (T. 43-45, 51-55, 57, 61, 71-72, & 90-91.) Williams's confederates entered the store and pointed the gun at Ray, threatening his life while giving him instructions. (T. 93, 114, & 122) Moreover, as in *Lawson*, the jury heard from a victim who "was completely terrified," and this fear was "absolutely" caused by the large firearm. (T. 118.) There was a

division of labor between Williams and his confederates, where they gathered materials, Williams acted as the driver, and his confederates entered and robbed the AT&T store. (T. 43-45, 51-55, 57, 61, 71-72, 74, 90-91, & 94.) Like *Lawson*, it is implausible that such plan would not have included the firearm they just obtained to threaten the employee at the AT&T store. *See Lawson*, 810 F.3d at 1041; *see also United States v. Brown*, 973 F.3d 667, 686-97 (7th Cir. 2020) (discussing evidence sufficient for "use" and "brandish").

### D.    Caselaw From Other Circuits Confirms that Williams Cannot Meet His Burden

Defendants in other circuits have also mounted meritless sufficiency challenges on similar facts. The precedential value of those cases varies because the *Rosemond* standard is not necessarily the same in all circuits. Still, given both the normal and plain-error review standards, it is worth noting the relative reasonableness of the jury finding here—and the lack of a miscarriage of justice under the applicable plain-error standard.

The Sixth Circuit, which interprets *Rosemond*'s mens rea holding differently than this Court, has upheld similar convictions:

In *United States v. Johnson*, 702 F. App'x 349, 358 (6th Cir. 2017), Johnson's codefendant brandished a firearm during the robberies, and Johnson argued that the trial evidence showed only that he knew the other man would use (rather than brandish) a gun. Id. (citing *Rosemond*, 572 U.S. at 80-82). The

Sixth Circuit held that as long as the government proved that the defendant "decided to join in the criminal venture . . . with full awareness of its scope . . . including its use of a firearm," he was liable as an aider and abettor under § 924(c). *Id*. at 359. (citing *Rosemond*, 572 U.S. at 77-78). The Sixth Circuit affirmed because the evidence showed that the defendant knew that his codefendant would use a gun in the course of the robberies—indeed, the evidence shows that defendant planned the robberies—and still agreed to act as the getaway driver. *Id.* If that evidence is sufficient to sustain defendant's § 924(c)(1)(A)(ii) convictions in another circuit, reversal is not necessary here on plain error review. *See also United States v. Donnell*, No. 21-3957, 2022 WL 10219848 (6th Cir. Oct. 18, 2022) (planning and helping procure firearm supported aiding-and-abetting brandishing conviction); *United States v. Soto*, 794 F.3d 635 (6th Cir. 2015) (affirming brandishing conviction on related facts); *cf. United States v. Atkins*, 842 F. App'x 524 (11th Cir. 2021) (affirming on similar standard).

Ninth Circuit precedent likewise rebuts any claim that the conviction here was a miscarriage of justice. In *United States v. Pritchard*, 692 F. App'x 349 (9th Cir. 2017), the court affirmed conviction under 924(c)(1)(A)(ii), where the evidence established that the defendant was present when the co-conspirators planned a robbery that necessarily involved displaying or making

known the presence of the gun to intimidate and control the bank employees and customers during the robbery. *Id*. at 352; *see also United States v. Henning*, 785 F. App'x 430 (9th Cir. 2019) (unpublished). That evidence overlaps in several ways with the trial evidence here. Williams, the driver, planned with his confederates and helped obtain the gun that was brandished in the robbery. (T. 36-37, 40, 42-43, 71-72, 79, 94, & 122.)

Again, those cases are from other circuits with nuanced standards, and some cases are unpublished. Still, they show the regularity with which juries convict defendants on facts similar to those here.

Williams cites other cases, but his comparisons are incomplete. Certainly, those cases cannot show an error worthy of reversal on the applicable standard of review.

First, in *Clark*, where the defendant committed six bank robberies, the first five his accomplice brandished a firearm, and the sixth robbery the defendant brandished a firearm. (A. Br. 17-18.) *See Clark v. United States*, 680 F. App'x 470, 475 (7th Cir. 2017). This Court dismissed the defendant's argument that the government failed to show "advance knowledge" for the initial five robberies. *Id*. at 474-475. The Court reasoned that "once Clark saw his confederate use a gun in the first robbery, he obviously knew that a gun

28

would be used in later robberies, [] making this argument preposterous as to all but, arguably, the first robbery." *Id*. at 475.

While *Clark* is not directly on point, similarly here, the jury was presented evidence that law enforcement was already surveilling Williams' vehicle based on a belief that it was involved in prior armed robberies. (T. 33.) The jury could reasonably infer from that evidence that Williams was familiar with prior robberies; combining that fact with the way the AT&T store robbery went down would add to a reasonable inference that he knew guns could be involved. (T. 33-34; PSR ¶ 6.) The surveillance strengthens the argument for advance knowledge. But the larger point is that this case does not have to be just like *Clark* to affirm. The evidence was sufficient and different. As discussed in great detail already, the government presented more than enough evidence at trial for a jury to find Williams had advance knowledge.

In *Farmer v. United States*, 867 F.3d 837 (7th Cir. 2017), the defendant and co-defendant discussed the robbery plan before the robbery and the defendant wrote the teller note mentioning the gun. *Id*. at 842. The defendant in *Farmer*, like Williams, was the getaway driver and was not in the bank during the robbery. (A. Br. 16.) Additional evidence showed that Farmer wrote the demand note, which twice referred to a gun. *Id*.

29

As with *Clark*, that *Farmer* was different does not mean a different result is appropriate. Those cases do not set the floor for sufficiency. Indeed, Williams does little to expand on this point by highlighting which differences are pivotal. Each case stands on its own evidence, and here (as discussed at length elsewhere), the evidence was enough for the jury to make a decision.

In *Rivera*, the defendant provided the gun used during multiple robberies and agreed one person would use the gun to "keep customers at the back of the store." (A. Br. 18); *see United States v. Rivera*, 901 F.3d 896, 901-902 (7th Cir. 2018). The underlying facts and evidence presented at trial varied from this present case, in large part because Rivera's confederate testified to the planned robbery. *Id.* at 902. Although the facts of *Rivera* are different, the case cites a point that matters here: a verdict may be rational even if it relies solely on circumstantial evidence. *Id.* (citing *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009.)) Considerable circumstantial evidence—picking up the gun, seeing it in the car, watching his friends enter, apparently speaking to them during the robbery, and watching them exit holding the stolen merchandise—worked together to make the jury's decision rational. (T.61-62, 69, 77-79, 86, 94, 119, 136-137, 142-143, 190-191, & 201.)

Williams' arguments under *Clark*, *Farmer*, and *Rivera* do not meaningfully dent the jury's reasonable decision here. (A. Br. 17-18.).

As the caselaw shows, the facts and evidence enabling a jury to convict vary from case to case. Here, again, it was fair to conclude that Williams knew the gun would be central to the robbery, given that he helped obtain the gun right before the crime. (T. 36-37, 40, & 135; PSR ¶¶ 7 & 9.) Add to that his role in planning the crime, his observation of the passing of the gun from one friend to another in the car, his knowledge that the gun was very large and visible, his apparent involvement in the robbery via speakerphone, and his role as getaway driver, and the jury had enough to decide the case, whether or not it was identical to previous cases. (T. 59-62, 77-79, 93, 119, 136-137, 142-143, 183-184, 190-191, & 201; A. Br. 6; PSR ¶ 15.)

Williams overstates matters when he says affirming the verdict "would eviscerate the distinction between the possession crime in § 924(c) and the brandishing crime." (A. Br. 18.) Of course, possession and brandishing are "separate crimes with distinct elements" and "separate punishments." *Id*. But his view pays insufficient respect to a jury's capacity to discern between possession and brandishing.

Indeed, the district court presented the two options as separate crimes to the jury in Jury Instruction No. 17:

> [i]f … you find from your consideration of all the evidence that the government failed to prove [Williams' advance knowledge that his confederates would brandish a firearm in furtherance of a crime of violence] beyond a reasonable doubt, then you will need to consider

whether Williams] aided the possession of a firearm in furtherance
of a crime of violence, which is the lesser included offense ….

(R. 137-2 at 20; *see also* 109, 111, & 138.)

The jury was allowed to draw the rational distinction it drew based on
that instruction. The Court should not take that prerogative away. *Rosemond*
does not directly tackle the difference between aiding and abetting possession
versus aiding and abetting brandishing. But mapping pre-*Rosemond*
delineations between "possession" and "brandishing" onto the newer intent
requirement for aiding and abetting further shows the reasonableness of the
jury's decision here.

A crime's use of a gun moves from "possession" to "brandishing" where—
as here—a defendant uses the weapon for showy intimidation. *United States
v. Bowen*, 527 F.3d 1065, 1074 (10th Cir. 2008); *accord United States v. Lettiere*,
640 F.3d 1271 (9th Cir. 2011); *Cf. United States v. Brown*, 724 F.3d 801, 802-
03 (7th Cir. 2013) (discussing proof standard for possession-in-furtherance).
That sort of use is perhaps more common in the robbery context than in drug
trafficking, given robbery's essential intimidation element.

And the record supports the jury's conclusion that Williams understood
how the gun would be used—not merely possessed—to facilitate the robbery.
Given the clear instructions it received, the jury could have decided that
Williams merely thought his friends would idly possess the gun. But the jury

32

was also permitted—as it did—to view the evidence (already catalogued at length here) as showing that all three confederates expected the firearm would facilitate the robbery through open use and intimidation—*i.e.*, brandishing. And that Williams likely heard Ray's terror at being threatened over the phone.

Williams does not want to allow this jury to exercise its prerogative to determine which category given conduct fits in, but his desire is not the law. *United States v. Allen*, 390 F.3d 944, 947-948 (7th Cir. 2004) (citing *United States v. Rock*, 370 F.3d 712, 714 (7th Cir.2004)). Here, the instructions were proper, and the evidence was sufficient for a reasonable jury to find advance knowledge and make a distinction between advance knowledge for possession and brandishing. (R. 137 & 138.)

## CONCLUSION

For the reasons stated above, the judgment of the district court should

be affirmed.

Respectfully submitted,

THOMAS E. WHEELER II
United States Attorney


By:     s/ Isaac Jordan
        Isaac Jordan
        Special Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE IN ACCORDANCE
## WITH CIRCUIT RULE 32

The foregoing BRIEF OF THE UNITED STATES OF AMERICA

complies with the type volume limitations required under Circuit Rule 32 of

the United States Court of Appeals for the Seventh Circuit in that there are

not more than 14,000 words and that there are 7,324, words typed in

Microsoft Word word-processing this 28th day of July, 2025.


 s/ Isaac Jordan _____
Isaac Jordan
Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on July 28, 2025, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Seventh

Circuit by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users

and that service will be accomplished by the CM/ECF system to the following:

Johanna M. Christiansen
Central District of Illinois Federal Public Defenders
Johanna_Christiansen@fd.org
Attorney for Defendant-Appellant

s/ Isaac Jordan
Isaac Jordan
Special Assistant United States Attorney
Office of the United States Attorney
10 West Market Street, Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 229-2434