No. 24-2683

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

ROBDARIUS WILLIAMS,
Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 22-CR-00063
The Honorable Judge Jane Magnus-Stinson

_____

REPLY BRIEF OF
DEFENDANT-APPELLANT ROBDARIUS WILLIAMS

_____

FEDERAL PUBLIC DEFENDER          THOMAS W. PATTON
CENTRAL DISTRICT OF ILLINOIS     Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois                 JOHANNA M. CHRISTIANSEN
Telephone:  (309) 671-7891       Assistant Federal Public Defender
Fax:        (309) 671-7898
Email:  Johanna_Christiansen@fd.org


                                 Attorneys for Defendant-Appellant,
                                 ROBDARIUS WILLIAMS

_____

**ORAL ARGUMENT REQUESTED**

_____

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................iv

ISSUE PRESENTED FOR REVIEW ...............................................................1

ARGUMENT ........................................................................................................2

I.    The evidence was insufficient to support the finding that Mr. Williams had advance knowledge that his co-defendants would brandish a firearm during the robbery of the cell phone store where the government presented no evidence of Mr. Williams's intent to aid and abet the brandishing of a firearm. ...............................................................................................2

    A.    Standard of Review. .................................................................2

    B.    The government failed to prove beyond a reasonable doubt that Mr. Williams had advance knowledge his co-defendant would brandish the firearm. ...............................2

        1.    The Malibu was under surveillance prior to the robbery. ...................................................................4

        2.    Mr. Williams spent time driving with Risper and Tucker prior to the robbery. .........................................6

        3.    Tucker and Risper passed the firearm between them. ...............................................................................7

        4.    The voice on the speakerphone evidence. ..................7

        5.    Mr. Williams must have watched "the brandisher" enter the store.........................................11

        6.    The size of the gun matters. ........................................12

        7.    Advanced knowledge based on knowledge obtained after the robbery was completed. ..............13

    C.    The government fails to understand Mr. Williams's argument about eviscerating the difference between possession and brandishing under § 924(c). ........................14

    D.    The evidence insufficient in this case under *Rosemond* and *Armour*. ..............................................................15

CONCLUSION..............................................................................................................17

# TABLE OF AUTHORITIES

**PAGE**

### Cases

*Montana v. Cross,* 829 F.3d 775 (7th Cir. 2016)..................................................3

*Rosemond v. United States,*  572 U.S. 65, 75-76 (2014) .......................................3, 13, 15

*United States v. Armour,* 840 F.3d 904 (7th Cir. 2016) ......................................3, 13, 15

*United States v. Barta,* 776 F.3d 931 (7th Cir. 2015) .......................................7

*United States v. Bell,* 28 F.4th 757 (7th Cir. 2022) ........................................2

*United States v. Trent,* 863 F.3d 699 (7th Cir. 2017) .......................................8

*United States v. Wilson,* 879 F.3d 795 (7th Cir 2018) ......................................4

*United States v. Woods,* 148 F.3d 843 (7th Cir. 1998) ....................................3

### Statutes

18 U.S.C. § 924 .................................................................................2, 3, 13, 14

## ISSUE PRESENTED FOR REVIEW

I.      Whether the evidence was sufficient to support the finding that Mr.

Williams had advance knowledge that his co-defendants would brandish a

firearm during the robbery of the cell phone store where the government

presented no evidence of Mr. Williams's intent to aid and abet the brandishing of

a firearm and Mr. Williams was the getaway driver, was not present when the

gun was brandished, and the firearm was concealed until his co-defendants were

in the store, committing the robbery?

# ARGUMENT

**I.    The evidence was insufficient to support the finding that Mr. Williams had advance knowledge that his co-defendants would brandish a firearm during the robbery of the cell phone store where the government presented no evidence of Mr. Williams's intent to aid and abet the brandishing of a firearm.**

### A.    Standard of Review.

The government argues this Court should review the issue for plain error because Mr. Williams did not move for judgment of acquittal.  (Gov't Br. 14.)[1] Mr. Williams agrees he did not move for judgment of acquittal in the district court.  (Opening Br. 12-13.)  However, review for plain error or a "manifest miscarriage of justice" is not the death knell for a sufficiency argument.  Even under this standard, reversal is warranted if the record is devoid of evidence pointing to guilt.  *United States v. Bell,* 28 F.4th 757, 763 (7th Cir. 2022).  The record here is devoid of evidence of the key element of aiding and abetting the 18 U.S.C. § 924(c) charge – that Mr. Williams had advance knowledge the firearm would be brandished.  Mr. Williams can meet the standards for reversal here.

### B.    The government failed to prove beyond a reasonable doubt that Mr. Williams had advance knowledge his co-defendant would brandish the firearm.

Mr. Williams was charged with aiding and abetting the brandishing a

---

[1] The following abbreviations are used herein: Government's Response Brief: "Gov't Br. __;" Mr. Williams's Opening Brief: "Opening Br. __;" Trial Transcript: "T. Tr. __;" and Government Exhibits at Trial: "Gov't Ex. __."

firearm during a crime of violence in violation of 18 U.S.C. § 924(c).  To be guilty of aiding and abetting, the defendant must have intent extending to the entire crime. *Rosemond v. United States,* 572 U.S. 65, 75-76 (2014).  "An intent to advance some different or lesser offense is not . . . sufficient: Instead, the intent must go to the specific and entire crime charged . . . to the full scope (predicate crime plus gun use) of § 924(c)."  *Rosemond,* 572 U.S. at 76; *see also Montana v. Cross,* 829 F.3d 775, 780 (7th Cir. 2016).  The intent element of the aiding and abetting a § 924(c) offense requires that the defendant's knowledge be "advance knowledge." *Rosemond,* 572 F.3d at 78.

When the § 924(c) offense charged by the government is brandishing, the government must present actual knowledge that his co-defendant would brandish the gun during the underlying robbery.  *Montana,* 829 F.3d at 785, *quoting United States v. Woods,* 148 F.3d 843, 846 (7th Cir. 1998).  This Court's *Armour* case definitively held that the government must prove beyond a reasonable doubt that the defendant knew in advance "not only that [his co-defendants] would be carrying firearms but also that they would be brandishing them."  *United States v. Armour,* 840 F.3d 904, 911 (7th Cir. 2016).

In the present case, the government lists a series of facts it believes supports a finding that Mr. Williams had advance knowledge his co-defendants would brandish the firearm and relies on this list, or parts thereof, throughout its

3

entire brief.  (Gov't Br. 17, 20, 23, 29, 31.)  The government is arguing the jury is allowed to take each of these pieces of evidence, some of which were not evidence at all, and use inference upon inference to reach guilty verdict.  (Gov't Br. 20.)  In cases such as this one that hinge on circumstantial evidence, this Court will not permit a verdict based "solely on the piling of inference upon inference" but will review the entirety of the evidence to determine if it points to guilt. *United States v. Wilson,* 879 F.3d 795, 802 (7th Cir 2018).  The evidence the government relies on, individually or as a whole, does not support a finding of guilt of the brandishing offense in this case.

### 1.    The Malibu was under surveillance prior to the robbery.

The government first points to the fact that Mr. Williams's mother's car, the Malibu, was under surveillance prior to the robbery at issue here because it was connected to other robberies.  (Gov't Br. 17, 29.)  The government adds that those other robberies included perpetrators who brandished a firearm.  (Gov't Br. 17, 29.)  But the government did not, and cannot, prove Mr. Williams had knowledge of the other robberies, participated in any other robberies, or was aware that a gun was brandished in any other robbery.

The government tries to argue the jury could "reasonably infer" that Mr. Williams was familiar with the prior robberies.  (Gov't Br. 29.)  But the only evidence the government points to in support of this inference is a stipulation

between the parties regarding the GPS tracking of the Malibu, which the

government read into evidence at trial as follows:

> The parties agree that on December 1, 2021, officers began
> investigating a 2017 Chevrolet Malibu bearing Indiana License Plate
> No. GJC926.  The 2017 Chevrolet Malibu was connected to an
> ongoing investigation by law enforcement. As part of the
> investigation, officers installed a GPS tracking unit and began
> conducting surveillance on the vehicle.
> No additional evidence needs to be introduced at trial to
> establish these facts beyond a reasonable doubt.

(T. Tr. 33, Gov't Ex. 32 – Stipulation.)  This evidence does not support the

inference the government posits here.

No connection was made through evidence allowing the jury to infer Mr.

Williams was involved in the other robberies *or* that any of these other robberies

involved brandishing firearms.  In fact, on appeal the government characterizes

this stipulation as "evidence that law enforcement was already surveilling

Williams['s] vehicle based on a belief that it was involved in prior armed

robberies."  (Gov't Br. 29.)  This is a blatant misrepresentation of the evidence.

The stipulation merely says law enforcement was investigating the Malibu

because it was "connected to an ongoing investigation by law enforcement."  The

type of investigation is not mentioned in the stipulation and, as such, was

unknown by the jury.

The stipulation was read by the government during Detective Austin

Arndt's testimony that he was part of a task force that investigated "a variety of

violent crime specifically to business, robbery, carjackings, kidnappings and serial sexual assaults." (T. Tr. 31.) He testified generally that they were partnered with a violent crime unit "in the IMPD covert robbery unit." (T. Tr. 31-32.) Nothing in the stipulation, nor in Arndt's testimony as whole, proved Mr. Williams knew there had been other robberies where the perpetrators brandished firearms. This evidence does not support any inference of advance knowledge of brandishing.

### 2.    Mr. Williams spent time driving with Risper and Tucker prior to the robbery.

The government relies on the fact that Mr. Williams drove to the apartment complex to pick up the firearm and then drove to the robbery with Darrelle Risper and Quintez Tucker, the men who committed the robbery at the AT&T store. (Gov't Br. 17, 19.) As argued in the Opening Brief, this fact only shows Mr. William knew the firearm was *possessed*, not that it would be brandished. (Opening Br. 15-16.) The government cannot seriously be arguing that every defendant who picks up a firearm, or even drives someone else to pick a firearm, has agreed to all further actions completed by the other person with that firearm. This argument can only succeed if the government proved a link between the driving and gun possession to the defendant's advance knowledge of brandishing. No such link exists here.

An offshoot of this argument is that Risper, Tucker, and Mr. Williams must

have been "on the same page" because they spent so much time together prior to the robbery. (Gov't Br. 18.) But the government has absolutely no evidence of the conversations between the three men in the Malibu or the men in the Focus. There was no co-conspirator or co-actor testimony in this trial.[2] Simply spending time together does not mean agreement on every element of the offense. *See United States v. Barta*, 776 F.3d 931, 939 (7th Cir. 2015) (noting a mere association with co-actors, even when combined with presence during conspiratorial discussions, is not sufficient to convict).

### 3. Tucker and Risper passed the firearm between them.

The government points to the fact that Risper and Tucker passed the gun between themselves in the car and Mr. Williams was aware they did so. (Gov't Br. 17, 19.) This fact, while not proven to any degree of certainty, only shows knowledge of possession, not knowledge of brandishing during the robbery. Mr. Williams admitted multiple times on appeal he knew the firearm was possessed by Risper and Tucker. Again, evidence of knowledge of possession *is not* evidence of advance knowledge of brandishing.

### 4. The voice on the speakerphone evidence.

The government heavily relies on the argument that it was Mr. Williams

---

[2] This lack of evidence of co-conspirator or co-actor testimony distinguishes this case factually from all of the cases cited by the government as involving "similar facts." (Gov't Br. 24-30.)

on the speakerphone during the robbery.  (Gov't Br. 17, 18, 20, 23, 31.)  There are several problems with this argument.  First, the government did not come close to proving beyond a reasonable doubt Mr. Williams was on the speakerphone. The only evidence was that the AT&T employee, Nathan Ray, testified there was a person on the speakerphone who had a deep voice.  (T. Tr. 118-19.)  Ray never heard Mr. Williams's voice and made no comparison between the two in his testimony.  Arndt testified that Mr. Williams had a deep voice.  (T. Tr. 61-62.) But Arndt never heard the voice of the person of the speakerphone and also did not make a comparison during his testimony.  The government never tied the two voices to the same person and, since no witness heard both the voice on the speakerphone and Mr. Williams's voice, the government's attempts at voice identification failed.  *See United States v. Trent*, 863 F.3d 699, 707 (7th Cir. 2017) (describing the method of voice identification at trial, a process the government did not, and could not, make here).  Having a deep voice is not unique to Mr. Williams and, without more, this is an inference the jury could not make.

The second problem with the government's argument about the phone is that it argues Mr. Williams must have known about the brandishing because he spoke to his co-defendants and Ray over the speakerphone.  (Gov't Br. 17.)  Even if the government had proven Mr. Williams was on the phone, none of the conversation involved brandishing the firearm.  In fact, the conversation over the

phone did not mention the firearm at all, according to Ray's testimony:

> Q.     And while they were in this safe room in your AT&T store, did they communicate with anyone?
> A.     Yes, there was a speakerphone that I heard the conversation from.
> Q.     And what did you hear?
> A.     Just various instructions that were given, specific -- what kinds of devices specifically to get, asked me questions about the back entrance that was in the previous picture and if it connected to Emerson Avenue.
> Q.     And did they talk about a meet-up location or anything like that?
> A.     Not that I heard, no.

(T. Tr. 118-19.)  This is the *only* testimony regarding what was said over speakerphone.  None of it involved the gun.

The third problem with the government's phone evidence is that the government asserts Mr. Williams drove to the back of the store *only after* asking questions over the speakerphone.  (Gov't Br. 17.)  This clearly misstates the evidence.  Arndt testified he saw Mr. Williams drop off Risper and Tucker, and then Mr. Williams drove to the side back of the store and parked.  (T. Tr. 79-83.) There is no testimony in the record as to when the conversation on the speakerphone occurred and the government's version of evidence on appeal does not match the evidence it presented at trial.  Mr. Williams let Risper and Tucker out of the car.  Mr. Williams then drove to the back.  Risper and Tucker spent a few minutes in the front part of the store with Ray in order to access the cash register.  (Gov't Ex. 7, 8, 11).  After that, they went to the back of the store to

access more products.  (Gov't Ex. 9.)  Ray did not clarify *when* the person made statements over the speakerphone.  (T. Tr. 119.)

The government also argues that Mr. Williams, the purported "deep voice" on the speakerphone, must have know Tucker and Risper were brandishing a firearm because he had "a first hand opportunity to hear Ray's grave fear during the robbery."  (Gov't Br. 18.)  This argument stretches the bounds of imagination beyond the proof at trial.  There was proof Ray was scared – he testified that he was.  There was *no* proof that fear was obvious to the person on the speakerphone and there was *no* proof Ray actually talked to the person on the speakerphone about the gun or his fear.  Aside from all of those issues with this argument, even if Mr. Williams knew Ray was scared because Risper and Tucker were pointing the firearm at him, this knowledge was not gained *in advance* of the robbery.  The government's arguments ignore the required timing of Mr. Williams's knowledge.

The government posits Mr. Williams's argument on appeal raises only "the specter" that there was another "imaginable" speaker on the phone.  (Gov't Br. 18.)  However, the imaginable specter of a speaker is not as fanciful as the government would like.  There were also men in the Ford Focus who were involved in the entire venture and were arrested at the same time the men in the Malibu were because they were all involved in the crime.  It is more likely one of

10

those men was on the speakerphone because the men in the Focus maintained

their distance from the store being robbed.  It was more likely the leader of the

crew distanced himself from the robbery to shield himself from culpability.  In

addition, a man who is not in the parking lot would need information about the

back door.  Mr. Williams could see the back door for himself because he was

seated in the car at the back side of the store.

### 5. Mr. Williams must have watched "the brandisher" enter the store.

The government argues that Mr. Williams watched the "brandisher" enter

the store holding the gun and that the "brandisher" was "walking awkwardly"

so Mr. Williams should have known he would brandish the gun.  (Gov't Br. 17,

20.)  This wild spin on the actual facts does not prove the element of advance

knowledge.  The "brandisher" only became the "brandisher" when he

brandished the firearm.  The firearm was not brandished until the "brandisher"

entered the store, a step in the robbery Mr. Williams could not see because he

was to the side of the store.  Mr. Williams saw his co-defendants walk to the store

and knew one of them possessed the firearm.  That is the extent of what he knew

and that proves possession, not brandishing.

The testimony at trial supports this timeline.  The portions of the

transcripts cited by the government do not prove Mr. Williams saw the

"brandisher" walk into the store.  (T. Tr. 57-58.)  Arndt testified as to the GPS

11

tracking video, Government Exhibit 37, which does not provide a video of the actual car or scene, but stop-motion compilation of the location of the GPS tracker every 30 seconds.  (T. Tr. 48.)  Arndt says, based on the GPS tracker motion, that the robbers walked into the store at 5:47-5:48 p.m. and the Malibu is parked in front of the store.  (T. Tr. 57.)  He then says, based on the GPS tracker video, that the Malibu driven by Mr. Williams "has moved back to the rear of the business" by 5:50 p.m.  (T. Tr. 58.)  This does not show exactly when Mr. Williams moved to the back of the store or what he saw.

The second piece of evidence cited by the government does not advance the argument either.  Detective Matthew McDonald testified he observed the Malibu enter the AT&T parking lot and saw Risper and Tucker get out of the car.  (T. Tr. 79.)  He testified that the Malibu was parked in front of the store when they got out and then parked in the back.  (T. Tr. 81.)  He does not testify when this occurred and where the Malibu was when the brandishing occurred.  In fact, when Officer Nicolas Andrews described his view of the "brandisher" walking with the firearm inside his pants and pulling out in the store, he makes no mention of where the Malibu is.  (T. Tr. 92-93.)  There is no evidence supporting this inference.

## 6.     The size of the gun matters.

The government asserts on appeal, as it did in the district court, that the

size of the gun matters to the question of advanced knowledge. (Gov't Br. 19, 25.) It goes as far as to argue that because of the large size of the gun, it is "implausible" that "Williams's confederates would not brandish" the firearm. (Gov't Br. 25.) The government's argument on this point would eliminate the crime of possession under § 924(c) based on the size of the gun. According to the government, small guns can be possessed *or* brandished. Large guns can *only* be brandished. This would lead to absurd results based on the size of the gun during the robbery.

### 7.    Advanced knowledge based on knowledge obtained after the robbery was completed.

Finally, the government argues that Mr. Williams had advance knowledge of the brandishing because he drove Risper and Tucker away from the robbery. (Gov't Br. 17.) This is nonsensical. *Rosemond* and *Armour* require the government prove *advance* knowledge. The very basic meaning of the word "advance" is "before" and knowledge acquired by Mr. Williams *after* the robbery is of no moment to what he knew before the robbery occurred.

The government asserts that Mr. Williams continued to participate in the crime after a gun was displayed or used in the crime and his failure to object shows he had advanced knowledge of brandishing. (Gov't Br. 16.) There is no evidence that Mr. Williams *saw* the gun being displayed or used by his co-defendants. As evidenced by the surveillance video, Mr. Williams was on the

side and back of the building with no view of the front of the store where Risper and Tucker walked and entered.  The facts cited by the government fail to prove Mr. Williams's advance knowledge.

### C.  The government fails to understand Mr. Williams's argument about eviscerating the difference between possession and brandishing under § 924(c).

"Instructing the jury on the possess crime in § 924(c)(1)(A) did not eviscerate the distinction between the two."  (Gov't Br. 13.) That is not the argument made here.  The jury instructions were proper in this case; the government's *evidence* was lacking.  To hold the evidence in this case showed advance knowledge of brandishing when it really just showed advance knowledge of possession, is evisceration of the possession portion of § 924(c).

The argument about concealing the gun suffers the same misunderstanding.  The government tells us that the fact that the firearm here was concealed allows "for a reasonable inference that [the firearm] would soon be unconcealed."  (Gov't Br. 20.)  But assuming that *all* concealed firearms will be unconcealed takes away the difference between possessing a firearm and brandishing a firearm.  If the government has its way with the evidence in this case, all possession cases will be brandishing cases.  This is a result Congress did not sanction when drafting the various subsections of § 924(c).

14

**D.    The evidence insufficient in this case under *Rosemond* and *Armour.***

The government attempts to distinguish the *Armour* decision by noting the ultimately conclusion in *Armour* was based on the jury being mis-instructed after *Rosemond.* (Gov't Br. 20-21.)  The government is correct that this was the basis for reversal and the Court in *Armour* stated that it had "no doubt" that the evidence could support a finding that Armour aided and abetting the brandishing.  (Gov't Br. 22.)  As discussed above, the jury instructions were correct here.  Unlike *Armour,* however, the evidence is insufficient to meet the elements of aiding and abetting the  brandishing charge.

The government disagrees, pointing to the facts that Armour told his confederate to bring the firearm and was the leader of the enterprise and posits that Mr. Williams is the same as Armour.  (Gov't Br. 22-23.)  The government is stretching the evidence too far.  Mr. Williams drove his co-defendants to get the firearm; he did not tell them to get it.  Mr. Williams was not the leader of the enterprise because he drove his mother's vehicle and stole a license plate from another car.  These are two relatively minor tasks in the entirety of the robbery he was convicted of and two extremely minor tasks considering the number of robberies Risper and Tucker were involved in with other conspirators and *without* Mr. Williams.

Finally, Mr. Williams agrees that a jury is able to discern between

brandishing and possession.  (Gov't Br. 32.)  In this case, with this lack of evidence of advanced knowledge of brandishing, the jury got it wrong.  Juries are not infallible, as we know from case law establishing the basis for a sufficiency of the evidence argument.  In this case, the jury got it wrong.  All the government proved was that Mr. Williams had advanced knowledge of possession of a firearm, not of brandishing.  This matter must be reversed and remanded for resentencing.

## CONCLUSION

For the foregoing reasons, Defendant-Appellant Robdarius Williams

respectfully requests this Court reverse and remand for resentencing.

Respectfully submitted,
THOMAS W. PATTON
Federal Public Defender

s/  Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
ROBDARIUS WILLIAMS

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)**

The undersigned certifies that this brief complies with the volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32 in that it contains 3,667 words and 335 lines of text as shown by Microsoft Word 2016 used in preparing this brief.

s/  Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN

Dated:  August 15, 2025